IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

| | | |
|---|---|---|
| JUDICIAL WATCH, INC., | * | |
| | * | |
| *Plaintiff*, | | |
| v. | * | Case No.: 17-cv-02006-ELH |
| LINDA H. LAMONE, *et al.*, | * | |
| | * | |
| *Defendants*. | | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OF LAW
IN SUPPORT OF STATE DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S COMPLAINT OR, IN THE
ALTERNATIVE, FOR SUMMARY JUDGMENT**

Defendants Linda H. Lamone, State Administrator of Elections; David J. McManus, Jr., Chairman, Maryland State Board of Elections; Patrick J. Hogan, Vice-Chairman, Maryland State Board of Elections; Michael R. Cogan, Member, Maryland State Board of Elections; Kelley A. Howells, Member, Maryland State Board of Elections; Gloria Lawlah, Member, Maryland State Board of Elections; and Jared DeMarinis, Public Information Officer, Maryland State Board of Elections; all sued in their official capacities (the "State Defendants"), by their undersigned attorneys, submit this Memorandum of Law in support of their Motion to Dismiss Plaintiff's Complaint or, in the Alternative, for Summary Judgment.

## INTRODUCTION

This case is an attempt by Judicial Watch, Inc. ("Judicial Watch" or "Plaintiff"), a non-profit corporation formed under the laws of the District of Columbia, to obtain a list of every registered voter in Montgomery County, including the name, date of birth, home address, most recent voter activity and active or inactive status for each voter. Maryland law limits access to voter registration lists to Maryland registered voters who pay a modest duplication fee and agree not to use the list for commercial or other purposes unrelated to the electoral process—conditions that Judicial Watch is unable or unwilling to satisfy. Instead, Judicial Watch claims that it is entitled to the voter registration list pursuant to the National Voter Registration Act ("NVRA"), 52 U.S.C. § 20507(i)(1), which provides for access to records concerning the implementation of "programs and activities" carried out to maintain the accuracy of voter registration lists. As demonstrated below, Judicial Watch is not entitled to the voter list because the plain language of the NVRA does not require disclosure of the list, which does not itself speak to the sufficiency of the "programs and activities" that the NVRA requires. Accordingly, Judicial Watch's Complaint should be dismissed.

## THE ALLEGATIONS IN THE COMPLAINT

1.     Plaintiff is a non-profit corporation that purports to "promote transparency, integrity, and accountability in government" by demanding records from local and state government and then using those records to further its political objectives. *See* Complaint, ¶ 5.

2. Among the information that Plaintiff typically demands from local and state governments are records related to voter registration.  Complaint, ¶ 5.

3. Plaintiff allegedly uses this voter registration information to determine whether jurisdictions are "properly maintaining accurate voter rolls" and by bringing lawsuits against local and state governments that it does not believe are complying with the NVRA.  Complaint, ¶ 5.

4. In the instant case, Plaintiff claims that the State of Maryland and Montgomery County are not complying with NVRA because there are "more registered voters in Montgomery County that there were citizens over the age of 18."  Complaint, ¶ 12.

5. Based on this assumption, Plaintiff on or about April 11, 2017 demanded certain records from the Maryland State Board of Elections ("SBE") pursuant to § 8(i) of the NVRA, 52 U.S.C. § 20507(i).  Complaint, ¶¶ 15-16.

6. Specifically, Plaintiff demanded "all pertinent records concerning the 'implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency' of Maryland's official eligible voter lists during the past 2 years."  Complaint, ¶ 15.

7. Among other things, Plaintiff's demand sought "Copies of the most recent voter registration database from Montgomery County, Maryland, including fields indicating name, date of birth, home address, most recent voter activity, and active or inactive status."  Complaint, ¶ 16.

8. On June 5, 2017, Linda Lamone, administrator of the SBE, responded in writing, explaining that Plaintiff's assertion that there are "more registered voters in Montgomery County that there were citizens over the age of 18" was based on faulty analysis of data and did not support the conclusion that Maryland's list-maintenance program violated the NVRA. Complaint, ¶ 19. A copy of that letter is attached hereto as Exhibit 1.[1]

9. Ms. Lamone also explained the many ways in which Maryland's list-maintenance program fully complies with federal law. Exhibit 1; Complaint, ¶ 19.

10. In addition, on or about July 7, 2017, the SBE advised Plaintiff that the documents it requested were available for review with the exception of the Montgomery County voter list. Complaint, ¶¶ 21-22.

11. The SBE declined to provide the Montgomery County voter list because the request was not made in compliance with Maryland law. Complaint, ¶ 22.

12. Shortly thereafter, Plaintiff filed the instant lawsuit for injunctive and declaratory relief, plus attorneys' fees and costs.

---

[1] The Court is permitted to consider Ms. Lamone's June 5, 2017 letter because it is referred to in the Complaint. Complaint, Doc. 1, ¶¶ 19-20; *HQM, Ltd. v. Hatfield*, 71 F. Supp. 2d 500, 502 (D. Md. 1999).

# ARGUMENT

**I. PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED OR, ALTERNATIVELY, SUMMARY JUDGMENT SHOULD BE GRANTED IN FAVOR OF THE STATE DEFENDANTS.**

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although the Court must accept well-pled factual allegations in a complaint as true, it is not required to accept conclusory factual allegations. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Society Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011). Nor is the Court required to consider unsupported legal conclusions or legal conclusions disguised as factual allegations. *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, [similarly] do not suffice," because "we are not bound to accept as true a legal conclusion couched as a factual allegation."); *Society Without a Name*, 655 F.3d at 346 (same). Therefore, a plaintiff cannot rely on unsupported legal conclusions, legal conclusions couched as factual allegations, or conclusory factual allegations devoid of any reference to actual events. *Iqbal*, 556 U.S. at 678. Rather, the complaint must contain direct and plausible allegations respecting all material elements necessary to sustain recovery under a viable legal theory. *Twombley*, 550 U.S. at 570.

Summary judgment must be granted where there is no dispute as to material fact and the moving party is entitled to judgment as a matter of law. *Runnebaum v. Nationsbank of Md.*, 123 F.3d 156, 163 (4th Cir. 1997). In order to survive a properly supported motion for summary judgment, the non-moving party must present evidence from which a

5

reasonable fact-finder could return a verdict in its favor. *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 768 (1984). The mere existence of some disputed fact does not require denial of the motion. *Thompson Everett, Inc. v. National Cable*, 57 F.3d 1317, 1322 (4th Cir. 1995). Rather, the disputed facts must be material to an issue necessary for resolution of the case and the quality and quantity of the evidence offered to create a question of fact must be adequate to support a verdict. *Id.*

Maryland law prohibits disclosure of the voter registration list to Judicial Watch. Maryland's election statute limits disclosure of voter lists to "Maryland registered voter[s]" who certify under oath that the list is not intended to be used for commercial solicitation or "any other purpose not related to the electoral process." Md. Code Ann., Elec. Law § 3-506(a)(1). As alleged in the Complaint, Plaintiff is a corporation formed under the laws of the District of Columbia and therefore is not a registered voter. Complaint, ¶¶ 5; 24. Moreover, there is no allegation in the Complaint that Plaintiff provided a certification under oath that the list is not being sought for commercial solicitation or another purpose not related to the electoral process. Complaint, ¶¶ 1-37. Plaintiff has all but conceded that it is not entitled to the list under Maryland law.

Instead, Plaintiff alleges that Maryland's state-law restrictions of access to voter registration lists is preempted by the NVRA and is therefore unenforceable. Complaint, ¶¶ 32-34. The Complaint asserts a claim that the NVRA requires the disclosure of voter registration lists and that SBE violated the Act by declining to provide Plaintiff with access to the database of registered voters in Montgomery County with all of its embedded personal information, including the "name, date of birth, home address, most recent voter

activity and active or inactive status" for each voter. Complaint, ¶ 16. The claims in the Complaint should be dismissed because Plaintiff is not entitled to the voter list under the NVRA.

### A. The NVRA and its List-Maintenance Requirements

The NVRA was enacted to "dramatically expand opportunities for voter registration." *Welker v. Clarke*, 239 F.3d 596, 598-99 (3rd Cir. 2001); *see* 52 U.S.C. § 20501(b) (describing as one of the purposes of the Act increasing "the number of eligible citizens who register to vote" in federal elections). The law—sometimes referred to as the Motor-Voter Law—advances voting rights by requiring state governments to offer voter registration opportunities to any eligible person who applies for or renews a driver's license, 52 U.S.C. § 20504, or applies for public assistance, 52 U.S.C. § 20506.

At the same time that it expands the voter rolls, the NVRA requires States to take steps to ensure that "accurate and current voter registration rolls are maintained." 52 U.S.C. § 20501(b). The NVRA carefully restricts, however, the removal of names from the rolls, and imposes "multiple constraints on how the states may go about doing so." *A. Philip Randolph Inst. v. Husted*, 838 F.3d 699, 705-06 (6th Cir. 2016), *cert. granted*, 137 S. Ct. 2188 (2017). For example, NVRA identifies only four grounds on which a voter's name may be removed from the rolls: "at the request of the registrant," "by reason of criminal conviction or mental incapacity" (as provided by state law), "the death of the registrant," or "a change in the residence of the registrant." 52 U.S.C. § 20507(a)(3), (4); *see also U.S. Student Ass'n Found. v. Land*, 546 F.3d 373, 376 (6th Cir. 2008); *Welker*,

239 F.3d at 599 (stating that the NVRA "strictly limited removal of voters"). And—significantly for this case—the NVRA requires States to wait two election cycles before removing people who may have moved out of the jurisdiction. 52 U.S.C. § 20507(d)(1)(B).

Although the NVRA spells out in some detail what the States may *not* do to "purge" their voting rolls, it does not prescribe how the States must maintain the accuracy of their voting lists. Instead, the NVRA requires only that States conduct a "general program that makes a reasonable effort to remove the names of ineligible voters from official voter lists." 52 U.S.C. § 20507(a)(4). The State's program must be uniform and non-discriminatory, and must comply with the Voting Rights Act, and may not remove voters by reason of their failure to vote, 52 U.S.C. § 20507(b), but beyond that, federal law does not dictate the type of program the States may implement to satisfy its list-maintenance responsibilities.

The NVRA does, however, offer States a safe harbor: "A state may meet the [subsection (a)(4) general program requirement] by establishing a program under which . . . change of address information supplied by the Postal Service through its licensees is used to identify registrants whose addresses may have changed." 52 U.S.C. § 20507(c)(1). States that choose to implement such a program—sometimes referred to as the National Change of Address or "NCOA" program—must send the voter a notice of the reported change of address and give the voter the opportunity confirm or correct the information received from the Postal Service.

To allow members of the public to determine whether a State is discharging its responsibilities under the Act, the NVRA mandates public disclosure of certain records related to a State's list-maintenance program. Specifically, States

8

> shall maintain for at least 2 years and shall make available for public inspection and, where available, photocopying at a reasonable cost, all records *concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters.*

52 U.S.C. § 20507(i)(1) (emphasis added).  Plaintiff contends that it is entitled to the Montgomery County voter list under this provision.

### B. The NVRA Requires the Disclosure of NCOA and other List-Maintenance Program Records, Not the Voter Registration Rolls and the Personal Information They Contain.

It is well-established that when the words of a statute are plain and unambiguous, courts are to enforce the statute as written.  *Stephens ex rel. R.E. v. Astrue*, 565 F.3d 131, 137, 140, (4th Cir. 2009); *Willenbring v. United States*, 559 F.3d 225, 235 (4th Cir. 2009).  The statute at issue here, 52 U.S.C. § 20507(i)(1), requires only disclosure of records concerning "the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters."  52 U.S.C. § 20507(i).  This plain language does not require the disclosure of voter lists themselves, but only records related to the *implementation of programs and activities* designed to ensure the accuracy of those lists.  This conclusion is further supported by guidance from the United States Department of Justice, which does not identify lists of registered voters as documents that need to be disclosed under 52 U.S.C. § 20507(i)(1).  *See* https://www.justice.gov/crt/national-voter-registration-act-1993-nvra (Question No. 40) (attached hereto as Exhibit 2).  Instead, the guidance clarifies that the States must make available to the public "lists of the names and addresses of all persons to whom Section

9

8(d) [change of address] notices are sent, and information concerning whether or not each such person has responded to the notice." *Id.*

The State Defendants do not dispute that Plaintiff is entitled to documents related to the implementation of its list-maintenance program, including the types of lists described in the Department of Justice guidance. As set forth in the SBE's June 5, 2017 letter to Plaintiff, Maryland's comprehensive list-maintenance program fits within the NVRA's "safe harbor" provision, which permits States to use change of address information provided by the United States Postal Service to maintain accurate voter lists. *Exhibit 1* at 1-2, citing 52 U.S.C. § 20507(c)(1)(A). Maryland's list-maintenance program includes other measures as well, such as processing voter requests to be removed from the rolls, Md. Code Ann., Elec. Law § 3-501(1), coordinating with jury commissioners with respect to people who decline jury service based on non-citizenship, who are deceased or have moved out of state, Code of Maryland Regulations ("COMAR") 33.05.06.06, and coordinating with other States through the Electronic Registration Information Center—a consortium of 20 States and the District of Columbia that coordinate with one another to identify voters who are registered in more than one jurisdiction. *See* Exhibit 1 at 4.

As Plaintiff admits in its Complaint, SBE has already provided documents related to Maryland's list-maintenance program. Complaint, ¶ 21. The only information that Plaintiff has not received is the voter list itself, which is not covered by the plain language of § 20507(i)(1).

If Plaintiff's contention that the NVRA preempts Maryland's election statute is correct, any person or entity could obtain a list of registered voters, including all of its

10

sensitive personal information, without any restriction on how the information could be used.  The Maryland legislature obviously was concerned about this very possibility when it limited access to Maryland registered voters who pay a modest duplication fee and agree not to use the list for commercial or other purposes unrelated to the electoral process.  Md. Code Ann., Elec. Law § 3-506(a)(1).

Other States too have enacted laws restricting access to voter registration lists.  Many States, like Maryland, restrict who may request copies of the voter registration list.  Indiana, for example, limits access to campaign committees, certain elected and governmental officials, and members of the press.  *See* Ind. Code Ann. § 3-7-26.4-6; *see also* www.elections.il.gov/votinginformation/computerizedvoterdata.aspx (Illinois limits access to candidates and campaign committees).  Many States charge fees, some quite large.  *See* sos.ga.gov/index.php/elections/order_voter_registration_lists_and_files (Georgia, $250); Or. Rev. Stat. Ann. § 247.945 ($500); Ind. Code Ann. § 3-7-26.4-12 ($5,000).  And all States prohibit the use of voter registration data for commercial use.  *See* Samuel Derheimer, *A State-by-State Analysis of Voter List Availability* (Oct. 1, 2015) (www.pewtrusts.org/en/research-and-analysis/analysis/2015/10/01/a-state-by-state-analysis-of-voter-list-availability).  If Plaintiff prevails in this case, *all* of these legislative restrictions would be wiped away, and any telemarketer or scam artist would be able to obtain a list of voters in Maryland or elsewhere for commercial or other inappropriate uses.

Had Congress intended to effect such a sweeping negation of state laws, it surely would have done so expressly and not by implication, as plaintiffs maintain.  This is particularly the case since widespread public disclosure of the personal information within

11

voting records would not serve the NVRA's purpose of encouraging citizens to register to vote. To the contrary, it has precisely the opposite effect. *See* Dartunorro Clark, *Trump Panel Prompts Thousands of Voters to Unregister Trump Panel Prompts Thousands of Voters to Unregister* (July 17, 2017) (www.nbcnews.com/politics/white-house/trump-panel-prompts-thousands-voters-unregister-n783891) (noting how, after the Presidential Advisory Commission on Election Integrity requested state voter rolls, 3,738 Colorado voters asked to be removed from the rolls for fear that their personal information would be made public).

The State Defendants are not aware of any reported decision within the Fourth Circuit in which a court ordered the disclosure of a list of registered voters under § 20507(i)(1). This is not a case like *Project Vote/Voting for America, Inc. v. Long*, 682 F.3d 331 (4th Cir. 2012), where the plaintiff sought disclosure of voter registration *applications*. In that case, the Fourth Circuit held that voter registration applications were covered by the plain language of § 8(i)(1)[2] of the NVRA because election officials are required to examine and evaluate those applications, and then register applicants that meet the qualifications. 682 F.3d at 335. The court found this "process of review" constituted a "program" and "activity" under § 8(i)(1) that was conducted for the purpose of maintaining accurate voter lists. *Id*.

---

[2] Section 8(i)(1) of the NVRA is now codified at 42 U.S.C. § 20507(i)(1). At the time of the *Long* opinion, § 8(i)(1) of the NVRA was codified at 42 U.S.C. § 1973gg-6(i)(1). 682 F.3d at 334-35.

There are other types of records that, like voter registration applications, reflect the substantive steps Maryland takes to determine whether someone is or remains eligible to vote. SBE has already provided Plaintiff with these records. For example, the SBE produced audit reports from 2015 to May 2017 for each county's list-maintenance practices. *See* Declaration of Mary Cramer Wagner, director of Voter Registration and Petition Division, Maryland State Board of Elections, attached hereto as Exhibit 3. These audit reports reflect the results of audits conducted by SBE to ensure that local elections officials are complying with the NVRA's list-maintenance requirements. *Id*. In addition, the SBE produced the registrar "newsletters" that SBE issues to provide guidance to local election officials on various issues, including NVRA compliance. *Id*. The SBE also produced copies of e-mail correspondence of SBE staff related to specific list-maintenance issues. *Id.*

The records provided to Plaintiff bear on the sufficiency of Maryland's list-maintenance program and allow Plaintiff to determine for itself whether that program meets the requirements of the NVRA. By contrast, a list of registered voters does not disclose any substantive information about Maryland's list-maintenance program, or why a particular voter is on the list and why another is not. It does not show how the agency reviewed an application to register or how it handled situations where a registered voter moves out of the jurisdiction, denies his or her citizenship for purposes of jury duty, or simply asks to be removed from the list. It says nothing about how SBE or the Montgomery County board coordinates with the National Change of Address system, other States, or other Maryland state agencies to ensure the accuracy of its list. In short, the voter

13


registration list is not a record of the implementation of a "program" or "activity" under the NVRA; it is simply a list of names.  Disclosure of the list might allow Judicial Watch to compare the list to whatever unofficial databases and criteria it uses, but it would not serve the NVRA's purpose of ensuring that Maryland's voter list-maintenance *program* complies with the NVRA's safe harbor provisions in 52 U.S.C. § 20507(c).[3]  Accordingly, Plaintiff is not entitled to the list under 52 U.S.C. § 20507(i)(1).

Because the NVRA does not mandate disclosure of voter registration lists, it does not preempt the Maryland state-law provisions that govern access to the voter registration list.  *See* Elec. Law § 3-506(a); *see also College Loan Corp. v. SLM Corp.*, 396 F.3d 588 (4th Cir. 2005); *True the Vote v. Hosemann*, 43 F. Supp. 3d 693, 740 (S.D. Miss. 2014) (ruling that Mississippi law barring disclosure of voters' personal information was not preempted by the NVRA because the state law did not conflict with § 8(i) of the NVRA).  Accordingly, the Complaint should be dismissed.

---

[3] As SBE explained in its response to Plaintiff's earlier letter, that there might be more registered voters in Montgomery County than residents over the age of 18 does not, as Judicial Watch contends, mean that Maryland's list-maintenance program is somehow flawed.  First of all, Maryland law allows 16- and 17-year-olds to register to vote, so they would appear on the registration list but not counted among the residents over the age of 18.  Exhibit 1 at 5.  And, as discussed above in text, the NVRA *requires* States to keep voters on the rolls for up to two election cycles after they may have moved out of the jurisdiction, with the result that it is "inevitable" that voter registration lists will include the names of people who are no longer eligible to vote.  *United States v. Missouri*, 2007 WL 1115204, at *4 n.7 (W.D. Mo. April. 13, 2007), *aff'd in part, rev'd in part and remanded*, 535 F.3d 844 (8th Cir. 2008); *see also* 52 U.S.C. § 20507(d)(1).

## CONCLUSION

For all of the foregoing reasons, Plaintiff's Complaint should be dismissed with prejudice or, in the alternative, summary judgment should be entered in favor of the State Defendants.

Respectfully submitted,

BRIAN E. FROSH
Attorney General of Maryland

*/s/ Robert A. Scott*

_____
ROBERT A. SCOTT
Federal Bar. No. 24613
Assistant Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
rscott@oag.state.md.us
(410) 576-7055
(410) 576-6955 (facsimile)

September 14, 2017                    Attorneys for the State Defendants