# EXHIBIT 1

**MARYLAND**

# STATE BOARD OF ELECTIONS
**P.O. BOX 6486, ANNAPOLIS, MD 21401-0486  PHONE (410) 269-2840**

David J. McManus, Jr., Chairman
Patrick J. Hogan, Vice-Chairman
Michael R. Cogan
Kelley A. Howells
Gloria Lawlah



Linda H. Lamone
Administrator

Nikki Charlson
Deputy Administrator

June 5, 2017

**By Certified Mail and Email (info@JudicialWatch.org)**

Mr. Thomas J. Fitton, President
Judicial Watch, Inc.
425 Third St. SW, Suite 800
Washington, D.C. 20024

      Re:    Maryland's Compliance with Section 8 of the National Voter Registration Act, 52 U.S.C. § 20507

Dear Mr. Fitton:

The State Board of Elections received your letter dated April 11, 2017, in which you call into question the legality of the measures that the State Board and the Montgomery County Board of Elections implement to ensure the accuracy of the list of registered voters in Montgomery County. You assert in your letter that "Montgomery County has more total registered voters than adult citizens over the age of 18." Based on that assertion, you conclude that "Montgomery County is not conducting reasonable voter registration record maintenance as mandated under the NVRA." I write today to explain, first, the many ways in which Maryland's list maintenance program meets (and exceeds) the requirements of the NVRA and, second, the flaws in the statistical comparison you make.

<u>Maryland's List-Maintenance Program Complies With the NVRA</u>

The NVRA requires states to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters" for one of two reasons only: death or change of residence. 52 U.S.C. § 20507(a)(4) (emphasis added). Federal law does not specify exactly what qualifies as a "reasonable effort" to maintain the accuracy of a state's voter rolls, but it provides a "safe harbor." Under that safe harbor provision, a State may utilize change of address information supplied by the United States Postal Service through its National Change of Address ("NCOA") program to identify registrants whose addresses may have changed. 52 U.S.C. § 20507(c)(1)(A).

Because information received from the NCOA is second-hand information (*i.e.*, not received directly from the registrant), the NVRA prescribes a subsequent confirmation notice procedure that states must follow to verify that the voter has moved outside the jurisdiction. *See* 52 U.S.C. § 20507(c)(1)(B)(ii), (d)(2). In addition, the NVRA specifies that, even if a voter does not respond to the confirmation notice, a state may not remove the person from the rolls

FAX (410) 974- 2019
MD Relay Service (800) 735-2258

Toll Free Phone Number (800) 222-8683
http://www.elections.maryland.gov

151 West Street Suite 200
Annapolis, Maryland 21401

until "the day after the date of the second general election for Federal office that occurs after the date of the notice." 52 U.S.C. § 20507(d)(2)(A).

The U.S. Department of Justice cites other "possible examples of a general list maintenance program." *See* "National Voter Registration Act, Questions & Answers," at https://www.justice.gov/crt/national-voter-registration-act-1993-nvra. According to the Department of Justice, states could undertake a "uniform mailing of a voter registration card, sample ballot, or other election mailing to all voters in a jurisdiction," which the state could then use to send a forwardable confirmation notice and begin the two-federal-general-election waiting period before removal. *Id.*

Beyond these "safe harbor" provisions, the NVRA expressly requires two things of a list-maintenance program. First, any list-maintenance program must be "uniform, nondiscriminatory, and in compliance with the Voting Rights Act of 1965." 52 U.S.C. § 20507(b)(1). Second, the NVRA expressly forbids states from removing someone from the list of registered voters "by reason of the person's failure to vote." 52 U.S.C. § 20507(b)(2). States may, however, consider non-voting within the context of the confirmation notice process described in the safe harbor provisions of the federal law. *Id.*; *see A. Philip Randolph Inst. v. Husted*, 838 F.3d 699 (6th Cir. 2016) (striking down Ohio's "supplemental" removal program on the grounds that it was initiated by a voter's failure to vote), *cert. granted*, No. 16-980, 2017 WL 515274 (U.S. May 30, 2017).

Maryland's list-maintenance program mirrors federal law in all principal respects. It is applied on a uniform and non-discriminatory basis and does not use a registered voter's failure to vote as a basis for initiating the removal process. Instead, the removal process is initiated by one of two sets of events. One set of events involves the confirmation notice required by federal law, the other does not.

First, a voter is removed from the rolls without the formal confirmation process when:

> (1) the voter requests removal, Md. Code Ann., Election Law § 3-501(1), COMAR 33.05.06.03;
>
> (2) the State Board learns that the voter is an incarcerated, convicted felon, is under a mental disability, or has been convicted of buying or selling votes, Md. Code Ann., Election Law §§ 3-501(2)(i), 3-504, COMAR 33.05.06.05C;
>
> (3) the Department of Health & Mental Hygiene or the Social Security Administration notifies the State Board of the voter's death, Md. Code Ann., Election Law §§ 3-501(2)(ii), 3-504(a), COMAR 33.05.06.05; or
>
> (4) a jury commissioner or court clerk notifies the State Board that the registered voter has moved from the jurisdiction, has died, or has cited his or her status as a noncitizen as a reason for not fulfilling jury service. COMAR 33.05.06.06.

Removals triggered by voter request are effectuated immediately; the others are generally completed within two weeks of notice.

Second, a voter may be removed from the rolls if the State or local board learns that the voter has moved out of the jurisdiction, but only if the voter fails to respond to the confirmation notice required by federal law. *See* Md. Code Ann., Election Law §§ 3-501(3), 3-502. If the voter fails to respond to that notice, the voter is designated an "inactive voter." *See* Md. Code Ann., Election Law § 3-503(a). After being designated as inactive, the voter is removed if "the voter has not voted or appeared to vote . . . in an election during the period beginning with the date of the notice through the next two general elections." *Id.*, § 3-503(e)(2)(ii); *see also* 52 U.S.C. § 20507(b)(2)(B) (same), § 20507(d)(1)(B)(ii) (same).

These provisions mirror federal law. Maryland law, like the NVRA, authorizes the removal of someone from the voter registration rolls (1) if the registrant requests that he or she be removed; (2) as provided by State law regarding eligibility in cases of criminal convictions or mental incapacity; (3) where the registrant has died; or (4) where the registrant's residence has changed. *Compare* Md. Code Ann., Election Law § 3-501 *with* 52 U.S.C. §§ 20507(a)(3)(A)-(C) and (4)(A)-(B). And, the Maryland provisions that require confirmation that a voter has moved out of state similarly mirror the requirements of federal law. *Compare* Md. Code Ann., Election Law § 3-502 *with* 52 U.S.C. § 20507(d). Because the two laws are substantively identical, there is no legal basis on which to conclude that Maryland's removal program violates federal law.

<u>How the State Board Implements Federal and State Law</u>

The State Board and the Montgomery County Board operate the list-maintenance program in accordance with the requirements of these federal and State laws. Voters are removed from the rolls without the need for the formal confirmation process when the State or local board receives a request from the voter, notice of registration from another State, notice of the voter's death from the Department of Health & Mental Hygiene (DHMH) or the Social Security Administration (SSA), notice from the courts of a voter's felony conviction and incarceration, or notice from a jury commission that the voter has declined jury service on the grounds of non-citizenship.

Removal on other grounds does not occur until the local board gives the voter the opportunity to confirm whether or not the voter should be removed from the rolls. That happens when the State or local board receives notice from a jury commission or another source (other than DHMH or the SSA) that a voter has died, or receives notice of a change of address from the NCOA program or some other source. Once the local board learns of one of these circumstances, it implements the confirmation process required by federal and State law. First, a confirmation notice is sent to the voter's new address. If no response is received within two weeks, the voter is designated as inactive. The voter will remain inactive for two federal general elections unless the voter confirms that he or she continues to reside within the jurisdiction. If the voter does not so confirm, the voter is removed from the rolls if he or she fails to vote or engage in other voting-related activity through the two subsequent federal elections. Md. Code Ann., Election Law § 3-503(b). In accordance with federal law, the

confirmation process is suspended 90 days prior to every federal election. 52 U.S.C. § 20507(c)(2)(A).

To give you a sense of the numbers involved, the Montgomery County Board of Elections, between June 2015 and April 2017, sent out 96,640 confirmation notices to registered voters and removed 75,980 people—almost 3,500 per month—from the voting rolls through this confirmation process.

The ways in which the State and local boards learn of a voter's potential change of address, thus beginning the confirmation process described above, go well beyond what is required under the NVRA's safe harbor provision. First, the State Board has been a member of the Electronic Registration Information Center (ERIC) since 2013. ERIC is a consortium of 20 States and the District of Columbia that share information about voter registration. Every other month, ERIC compares the voter registration lists of the participating jurisdictions and generates a list of voters who appear on more than one list. This type of cross-state list-comparison is not required by the NVRA.

Maryland's participation in ERIC has already improved the efficiency of its list-maintenance program, and ongoing expansions of ERIC will improve it more. For instance, in early 2017, National Change of Address records began to be incorporated into ERIC, providing an additional redundancy to ensure that Maryland and the other participating states learn that a voter has died or has relocated outside of the jurisdiction. Montgomery County has been participating in the NCOA program since 2007.

In addition to its participation in ERIC and the NCOA program, the State and local boards learn of registered voters who have relocated out of the jurisdiction through the specimen ballot process. In Maryland, registered voters are sent, at their address of record, a specimen ballot before each general election. COMAR 33.05.07.01. When a local board receives back an undeliverable specimen ballot, it sends the voter a confirmation notice by forwardable mail with a return card on which the voter may report the voter's current address. Md. Code Ann., Election Law § 3-502(c). If the voter returns the notice confirming an address outside of Maryland, the name can be removed from the voter registration list. *Id.*, § 3-502(e)(1). If the voter does not respond, the local board initiates the federally-authorized confirmation process to determine whether the voter has in fact moved outside of the jurisdiction. The U.S. Department of Justice cites this practice as another "possible example[] of a general list maintenance program" that satisfies the requirements of the NVRA. *See* "National Voter Registration Act, Questions & Answers," at https://www.justice.gov/crt/national-voter-registration-act-1993-nvra. This is yet another way in which Maryland's list-maintenance program goes beyond the requirements of federal law.

Judicial Watch's Statistical Comparison is Flawed

For the reasons discussed above, Maryland's list-maintenance program is entirely consistent with the requirements of the NVRA. The only support you provide for your contrary assertion is that, according to your calculations, Montgomery County has "more total registered voters than adult citizens over the age of 18." You indicate that Judicial Watch arrived at that conclusion by comparing the U.S. Census Bureau's "2011-2015 American

Letter to Mr. Fitton
June 5, 2017
Page 5 of 7

Community Survey" with registration data derived from the U.S. Election Assistance Commission and the County's list of registered voters. You do not provide the actual data you used or identify the specific places where you found them, but even assuming that you were using accurate and up-to-date data, you are comparing apples to oranges in at least three different ways.

First, whereas the census data you use is limited to residents over the age of 18, the list of registered voters in Montgomery County includes 16- and 17-year-olds, who are eligible to register (though not vote) under Maryland law. *See* Md. Code Ann., Election Law § 3-102. You are thus comparing one set of data of people 16 years old and older to another set of people *18* years old or older.

Second, because it abuts the District of Columbia, Montgomery County is home to a number of federal employees who work in the State Department or in the military. Many of these people live overseas and therefore may not be captured in census survey counts of Montgomery County residents, even though they are registered to vote in Montgomery County. Your failure to account for this population further undermines the value of the comparison you make.

Finally, more than one third of the population of Montgomery County consists of people who were born in a foreign country. At least half of these people are naturalized citizens, many of whom are registered to vote in Montgomery County. These naturalized citizens frequently leave the United States and return to their country of origin yet legally retain their voting rights in Maryland. *See* 21 U.S.C. § 20310 (Uniformed and Overseas Citizens Absentee Voting Act, or UOCAVA). These absentee voters remain on the list of registered voters in Montgomery County and yet may not reside there in a way that would be captured by the census. Because of the high percentage of foreign-born citizens in Montgomery County, your failure to account for this portion of the electorate is yet another way in which comparing the list of registered voters with residents of Montgomery County does not shed light on the effectiveness of Maryland's list-maintenance program.

In short, the factual premise of your letter—that there are more registered voters in Montgomery County than there are eligible residents—is wrong and misleading because it ignores the fact that the voter rolls in Montgomery County include 16- and 17-year-olds and overseas voters. But more fundamentally, the fact that a list of registered voters might contain more names than a list of residents is not "strong circumstantial evidence"—or even evidence at all—that a state is not appropriately maintaining its voter registration records.

The NVRA was enacted to preserve the right to vote and to prevent the disenfranchisement of voters through selective or discriminatory "purges." The NVRA list-maintenance requirements carefully restrict a state's power to remove people from the rolls of registered voters. The Act provides that "each State *shall* . . . provide that the name of a registrant *may not be removed* from the official list of eligible voters *except*" in one of four circumstances. *See* 52 U.S.C. §§ 20507(a)(3)(A)-(C); (4)(A)-(B) (emphasis added) (providing for removal at the voter's request; based on a criminal conviction or mental incapacity; death; or change of residence). And, with respect to the fourth grounds for removal—when the registrant's address has changed—the NVRA adds a further restriction: "a State *shall not remove* the name of a registrant . . . on the grounds that the registrant has changed residence *unless*" one of two

additional circumstances apply: (i) he or she "confirms in writing" that he or she has changed residence to one outside the election official's jurisdiction, or (ii) he or she has failed to respond to an address-change confirmation notice and has failed to vote in an election in a time period running from the date of the notice to the day after the second consecutive federal general election thereafter. *Id.* § 20507(d)(1) (emphasis added).

At the same time that the NVRA restricts the removal of registered voters from the rolls, it mandates that eligible voters be *added* to the rolls. "In the administration of voter registration for elections for Federal office," the NVRA provides, "each State shall ... insure that any eligible applicant is registered to vote in an election." 52 U.S.C. § 20507(a)(1). Indeed, as the Third Circuit Court of Appeals described,

> One of the NVRA's central purposes was to dramatically expand opportunities for voter registration and to ensure that, once registered, voters could not be removed from the registration rolls by a failure to vote or because they had changed addresses. [42 U.S.C. § 20507.] To achieve this purpose, the NVRA strictly limited removal of voters based on change of address and instead required that, for federal elections, states maintain accurate registration rolls by using reliable information from government agencies such as the Postal Service's change of address records. [52 U.S.C. § 20507(c).] The NVRA went even further by also requiring the implementation of "fail-safe" voting procedures to ensure voters would not be removed from registration rolls due to clerical errors or the voter's own failure to re-register at a new address. [52 U.S.C. § 20507(c)]; *See also* H.R. Rep. No. 103-9, at 18 (1993), *reprinted in* 1993 U.S.C.C.A.N. 105.

*Welker v. Clarke*, 239 F.3d 596, 598-99 (3d Cir. 2001). These two federal commands—to maximize registration and restrict removal—mean that it should come as no surprise that the number of names appearing on the list of registered voters would in some circumstances exceed those who are actually eligible to vote in a particular jurisdiction. Indeed, one federal court has observed that "[t]he NVRA makes it *inevitable* that voter registration lists will be inflated because of its requirements that States wait to remove a voter's name who has not responded to an [NVRA confirmation] notice until that voter fails to vote in two successive federal elections." *United States v. Missouri*, 2007 WL 1115204, at *4 n.7 (W.D. Mo. April. 13, 2007), *aff'd in part, rev'd in part and remanded*, 535 F.3d 844 (8th Cir. 2008). Based on past experience, Montgomery County's list of registered voters probably carries more than 80,000 individuals who ultimately will be removed at the close of the statutory waiting period.

Accounting for the effect of the two-year waiting period, for overseas voters, and for the fact that 16- and 17-year-olds may register to vote in Maryland, your numbers are off by tens of thousands of people. In other words, the statistical disparity that Judicial Watch finds so compelling is not evidence—much less "strong circumstantial evidence"—that Maryland's list-maintenance program is inadequate. To the contrary, as discussed above, Maryland's program meets and *exceeds* the requirements of federal law.

<u>Production of Records</u>

Your letter also included a request that we provide "all pertinent records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of Maryland's official eligible voter lists during the past 2 years." This office is compiling responsive documents and will provide them shortly.

As I have explained, Maryland's list-maintenance program complies with the NVRA, and the numbers stated in your letter do not support a conclusion to the contrary. If you have any additional questions, or if you would like to discuss ways in which you believe Maryland might be able to improve its list-maintenance practices in accordance with the NVRA, please let me know.

Sincerely,

*Linda H. Lamone*

Linda H. Lamone
Administrator

cc:   Members, State Board of Elections
      Montgomery County Board of Elections