IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JUDICIAL WATCH, INC. | * | |
| Plaintiff | * | |
| v. | * | Case No.: 1:17-Civ-02006-ELH |
| LINDA H. LAMONE, *et al.* | * | |
| Defendants | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

JAMES SHALLECK, in his official capacity as President of the Montgomery County Board of Elections, NAHID KHOZEIMEH, in her official capacity as Vice-President of the Montgomery County Board of Elections, MARY ANN KEEFFE, in her official capacity as Secretary of the Montgomery County Board of Elections, ALEXANDER VINCENT, in his official capacity as Member of the Montgomery County Board of Elections, DAVID NAIMON, in his official capacity as Member of the Montgomery County Board of Elections and JACQUELINE PHILLIPS, in her official capacity as Substitute Board Member of the Montgomery County Board of Elections, some of the Defendants, by KEVIN KARPINKSKI and KARPINSKI, COLARESI & KARP, P.A., their attorneys, submit the instant Memorandum of Law in Support of their Motion to Dismiss the Complaint, and in support thereof states the following:

## INTRODUCTION

Plaintiff, Judicial Watch, Inc. (hereinafter "Judicial Watch"), has filed suit against all

of the members of the Maryland State Board of Elections (hereinafter "SBE") and all of the members of the Montgomery County Board of Elections (hereinafter "MCBOE") in their "official capacities." Thus, Plaintiff has sued the SBE and the MCBOE as entities. See Kentucky v. Graham, 473 U.S. 159, 169 (1985)(official-capacity suits generally represent only another way of pleading an action against the entity of which the officer is an agent).

Judicial Watch brings this action "to compel compliance with" Section 8(i) of the National Voter Registration Act ("NVRA"), 52 U.S.C. §20507(i). Judicial Watch seeks injunctive and declaratory relief and attorneys' fees, costs and expenses.

## ALLEGATIONS OF COMPLAINT

The "facts" alleged in the Complaint are that, on April 11, 2017, Plaintiff Judicial Watch "sent an email to the address for the officers and members of the Maryland State Board of Elections and Maryland's State Administrator, and to the address for the officers and members of the Montgomery County Board of Elections." Complaint, ¶11. "That email contained a letter to David J. McManus, Jr., Chairman of the Maryland State Board of Elections, dated April 11, 2017 (the 'Notice Letter,' Exhibit A), setting forth various alleged violations of the NVRA. This letter was also sent by certified mail to the Maryland State Board of Elections and the Montgomery County Board of Elections." Complaint, ¶11. The Complaint further states that "[t]he Notice Letter observed that there were more registered voters in Montgomery County than there were citizens over the age of 18, resulting in a registration rate for the county of greater than 100%." Complaint, ¶12. "The Notice Letter concluded from this that Maryland and Montgomery County were not complying with

2

their obligations under the NVRA to remove ineligible registrations from the voter rolls." Id.[1] The Notice Letter stated that "'[t]his letter serves as statutory notice that Judicial Watch will bring a lawsuit against your office if you do not take specific actions to correct these violations of Section 8 within 90 days." Complaint, ¶13.

While the Complaint correctly alleges in Paragraph 11 that Plaintiff's "Notice Letter" was "sent by certified mail to the Maryland State Board of Elections and the Montgomery County Board of Elections," the Complaint fails to note that MCBOE was simply **copied** on the letter. The request was directed to the Chair of the State Board of Elections, Mr. McManus, and to SBE. It was not directed to MCBOE, nor did the letter request any documents from MCBOE. Thus, MCBOE had no reason to believe that it was being asked to do anything.

The Notice Letter asked SBE for a written response within 45 days "informing [Plaintiff] of the compliance steps you are taking" and described in detail the kinds of

---

[1] This assertion ignores the complex and time-consuming provisions of the NVRA, Section 8 (52 U.S.C. §20507), for maintenance of voter rolls. Section 8 "pairs the mandate that states maintain accurate voter rolls with multiple constraints on how the states may go about doing so." A. Philip Randolph Inst. v. Husted, 838 F.3d 699 (6th Cir. 2016), cert. granted, 137 S.Ct. 2188 (May 30, 2017)(the issue upon which certiorari was granted is whether 52 U.S.C. §20507 permits Ohio's list-maintenance process, which uses a registered voter's voter inactivity as a reason to send a confirmation notice to that voter under the NVRA and HAVA). See also N. Carolina State Conf. of the NAACP v. N. Carolina State Bd. of Elecs., 2016 WL 6581284, at *3 (M.D.N.C. 2016)(discussing the NVRA provision that requires notice and a waiting period of two election cycles before a voter can be purged from the voting rolls, among other statutory requirements before voters can be removed from voter registration lists).

compliance-related information that was being sought from SBE. Complaint, ¶14. Citing Section 8(i) of the NVRA, the Notice Letter also asked for "all pertinent records concerning 'the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency' of Maryland's official eligible voter lists during the past 2 years. Please include these records with your response to this letter." Complaint, ¶15. Among other things, the Notice Letter requested the following:

> Copies of the most recent voter registration database from Montgomery County, Maryland, including fields indicating name, date of birth, home address, most recent voter activity, and active or inactive status.

Complaint, ¶16. The SBE has full access to the above-requested database, so that there would be no need for SBE to request the database from MCBOE.

The Notice Letter added, "If you do not produce these records within 45 days, or if you fail to otherwise advise us that you are making them available to us at specified times and locations, you will be deemed to be in violation of the NVRA and subject to litigation." Complaint, ¶17. On May 26, 2017, Judicial Watch received an email from Nikki Charlson of the Maryland State Board of Elections. Ms. Charlson is Maryland's Deputy State Administrator of Elections." Complaint, ¶18. That email stated: "The Maryland State Board of Elections received your letter alleging the failure of the Montgomery County Board of Elections to perform list maintenance activities required by the National Voter Registration Act. We are in the final stages of our response and will submit it and the requested documents next week." Id.

On June 5, 2017, Judicial Watch received a letter from Linda H. Lamone, Maryland's

4

State Administrator of Elections. That letter began: "The State Board of Elections received your letter dated April 11, 2017, in which you call into question the legality of the measures that the State Board and the Montgomery County Board of Elections implement to ensure the accuracy of the list of registered voters in Montgomery County." Complaint, ¶19. That letter went on to contend at length that Maryland's voter list maintenance program complies with the NVRA. Id.

Ms. Lamone's June 5, 2017, letter also stated: "Your [Judicial Watch's] letter also included a request that we provide 'all pertinent records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of Maryland's official eligible voter lists during the past 2 years.' This office is compiling responsive documents and will provide them shortly." Complaint, ¶20.

On July 7, 2017, Jared DeMarinis, the Public Information Act officer for the Maryland State Board of Elections, emailed Judicial Watch (Exhibit B), stating that "[t]he documents that you requested from your April 11, 2017 letter are ready for review," and asking how they should be transmitted. Complaint, ¶21. In that same email, Mr. DeMarinis stated: "Additionally, the request for the Montgomery County voter registration list was not made in accordance with Election Law Article 3-506. Therefore, it will not be processed." MCBOE did not take part in this decision by SBE, nor was MCBOE copied on the email.

The Complaint goes on to allege that Maryland Code, Election Law Article, §3-506 provides that:

5

>   (a)(1) A copy of a list of registered voters shall be provided to a Maryland registered voter on receipt of: (i) a written application; and (ii) a statement, signed under oath, that the list is not intended to be used for: 1. commercial solicitation; or 2. any other purpose not related to the electoral process.
>
>   (2) In consultation with the local boards, the State Board shall adopt regulations that specify: (i) the time for a list to be provided under this subsection; (ii) the authorization to be required for providing a list; (iii) the fee to be paid for providing a list; (iv) the information to be included on a list; (v) the format of the information; and (vi) the medium or media on which the information is to be provided.

§3-506(a)(emphasis added). See Complaint, ¶23.

It is alleged in the Complaint that on July 11, 2017, Robert Popper, counsel for Judicial Watch, spoke to Mr. DeMarinis by telephone. Complaint, ¶24. "Mr. Popper observed that Judicial Watch, as a not-for-profit organized under D.C. law, was not, and never could be, 'a Maryland registered voter' as required by §3-506(a), and that the practical effect of that requirement was that Judicial Watch would never be able to obtain the requested voter list." Id. Mr. DeMarinis confirmed that this was his understanding as well. Id. He added that he had been told this by the Maryland State Attorney General's office. Id.   MCBOE was not included in the afore-described telephone conversation.

## CLAIMS AND PRAYERS FOR RELIEF

Count I (the only Count) asserts that "each State shall maintain" and permit inspection of records concerning the "implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." Complaint, ¶27. It is alleged that "[t]he voter registration list requested by Judicial Watch is a record covered by section 8(i) of the NVRA." Complaint, ¶28. Count I further

alleges that Section 8(i) of the NVRA contains no requirement that only an individual person or a registered voter may request the documents that the statute describes." Complaint, ¶29. Thus, the Complaint alleges that "Section 8(i) authorizes and entitles Judicial Watch to inspect and copy the requested voter list." Id. The Complaint further asserts that Section 3-506(a), requiring that a person requesting a list of registered voters in Maryland must be "a Maryland registered voter," Complaint, ¶30, "makes it impossible for Judicial Watch, a Washington, D.C. non-profit, to inspect and copy the voter list that it otherwise is entitled to inspect and copy under Section 8(i) of the NVRA." Id. The Complaint contends that "[b]y denying Judicial Watch the ability to obtain documents it otherwise could obtain under Section 8(i) of the NVRA, MD. CODE ANN., ELEC. LAW §3-506(a) conflicts with federal law." Complaint, ¶31. The Complaint further asserts that "MD. CODE ANN., ELEC. LAW §3-506(a) also conflicts with Section 8(i) of the NVRA in several other respects involving the SBE's authority under the statute. Complaint, ¶32. Thus, Plaintiff alleges that the NVRA "preempts" Maryland Code, Election Law Article, §3-506(a). Complaint, ¶33. Finally, Count I alleges that, because the NVRA "preempts" Maryland law, "Defendants' refusal to provide the requested voter list violates Section 8(i) of the NVRA." Complaint, ¶35.

The Complaint challenges the SBE's decision, not any decision made by MCBOE. The Prayers for Relief in the Complaint are as follows:

1. Declare that Defendants[2] are in violation of Section 8(i) of the NVRA by refusing to allow Judicial Watch to inspect and copy the requested voter registration list;

2. Declare that Section 8(i) of the NVRA preempts and supersedes any requirement in Md. Code, Election Law Art., §3-506(a) and any other Maryland statute, regulation, practice or policy that bars Judicial Watch from inspecting and copying the requested voter list;

3. Order Defendants to allow Judicial Watch to inspect and copy the Montgomery County voter registration list;

4. Permanently enjoin Defendants from refusing to permit Judicial Watch to inspect and copy voter registration lists of the kind sought by Judicial Watch in this matter;

5. Order Defendants to pay Judicial Watch reasonable attorney's fees, including litigation expenses and costs, pursuant to 52 U.S.C. §20510(e); and

6. Award Judicial Watch such other and further relief as this Court deems just and proper.

Complaint, pp. 11-12.

---

[2] "Under Rule 8(a), grouping multiple defendants together in a broad allegation is insufficient to provide the defendants with fair notice of the claims against them and the grounds for relief." Walsh v. Bank of New York Mellon, No. GJH-15-934, 2016 WL 8716599, at *4 (D. Md. Mar. 25, 2016) (internal quotation marks omitted). While Plaintiff has included the MCBOE as a defendant, the Complaint is devoid of any specific allegations regarding requests made to the MCBOE which could possibly serve as the basis for a claim against it.

## ARGUMENT

**I.  THE MONTGOMERY COUNTY BOARD OF ELECTIONS IS ENTITLED TO DISMISSAL.**

Under §2-102(b) of the Election Law Article, Maryland law provides that SBE is responsible for ensuring "compliance with this article and with any requirements of federal law." The five-member SBE appoints a State Administrator of Elections who is designated as "the chief State election official" and is tasked with administering Maryland's election apparatus. §2-103. Section 2-201(2) provides that "[e]ach local board and its staff is subject to the direction and authority of the State Board."

The instant dispute is between the Maryland SBE and Plaintiff. It does not involve MCBOE, as MCBOE was not asked to provide any documents, but was merely copied on the "Notice Letter" Plaintiff sent to SBE. The Notice Letter was not directed to and did not request any action by MCBOE. Nor did MCBOE have any input or involvement in SBE's decision to deny the request based on §3-506.

Issuance of a declaratory judgment is appropriate (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, or (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding. 28 U.S.C.A. §2201(a). Neither situation exists here with respect to Defendant MCBOE. Plaintiff asks this Court to declare that **both Defendants** are legally responsible for a decision that was plainly made **only by SBE**. Plaintiff asks the Court to declare that SBE's decision was incorrect, that SBE violated the NVRA, and that Election Law Article, §3-506 is preempted by the NVRA. Even accepting the plausible allegations

9

of the Complaint (and its attachments) as true, it is clear that MCBOE is not a proper Defendant. A declaratory judgment as to MCBOE would not serve a useful purpose in clarifying and settling legal relations between them, nor would it terminate a "controversy" or afford relief from uncertainty giving rise to this lawsuit. Indeed, there is no case or controversy between Plaintiff and MCBOE. Accordingly, MCBOE respectfully submits that it is entitled to dismissal.[3]

Plaintiff seeks certain declaratory and injunctive relief, as well as attorney's fees and costs, for the SBE's refusal to provide the voter registration list on the basis of §5-306. However, the reality is that MCBOE was never asked by Plaintiff to produce the records and did not refuse to do so. Because MCBOE was never asked to provide the documents in the first place, it cannot be accused of violating the NVRA by failing to do so. Nor did MCBOE have any role in the decision by SBE to deny Plaintiff's request. Plaintiff's Exhibit B (the email) and the allegations of the Complaint regarding Mr. Popper's telephone conversation with a representative of SBE demonstrate that the MCBOE was not the party from who Plaintiff sought the voter registration rolls, nor was MCBOE the party that refused to produce them pursuant to §5-306. Plaintiff's counsel never contacted counsel for MCBOE seeking those records. Thus, there is no "case or controversy" between Plaintiff and MCBOE, and the Complaint fails to plausibly allege one. Accordingly, any declaratory relief as to MCBOE would be purely advisory in nature.

The federal courts established pursuant to Article III of the Constitution do not have

---

[3] MCBOE asked counsel for Plaintiff (Mr. Robert Popper, Esquire) to voluntarily dismiss MCBOE, but he refused. MCBOE was therefore required to file the instant Motion.

jurisdiction to render advisory opinions as to an issue or a party. United Public Workers v. Mitchell, 330 U.S. 75, 89 (1947); Michigan v. Long, 463 U.S. 1032, 1041-1042 (1983). Recently, in De La Fuente v. Lamone, 2017 WL 2439143, at *6 (D. Md. 2017), this Court (Hollander, J.) stated:

> For a declaratory judgment to issue, there must be a dispute which 'calls, not for an advisory opinion upon a hypothetical basis, but for an adjudication of a present right upon established facts.' Aetna Life Ins. Co. of Hartford, Conn. v. Haworth, 300 U.S. 227, 242 (1937); see also Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273 (1941).

Id.

Accepting as true the allegations of the Complaint, there is no dispute between Plaintiff and MCBOE and, thus, any declaratory judgment as to MCBOE would be an advisory opinion on a hypothetical basis. Further, the NVRA required Plaintiff to submit its written notice of the violation to the "chief election official of the state." 52 U.S.C.A. §20510(b). Because it was SBE, not the MCBOE, that was asked to provide the voter registration information, SBE should be a party to this lawsuit. Montgomery County played no role in deciding what should (and should not) be provided. The Complaint and its "plausible" allegations fail to state a case, controversy or basis for suit against MCBOE. Accordingly, MCBOE is not a proper Defendant and respectfully submits that it should be dismissed from this lawsuit.

## CONCLUSION

For all of the foregoing reasons, Defendant MCBOE is entitled to dismissal of the Complaint.

Respectfully submitted,

KARPINSKI, COLARESI & KARP, P.A.

BY: _____/s/_____
KEVIN KARPINSKI, #11849
120 East Baltimore Street
Suite 1850
Baltimore, Maryland 21202
410-727-5000
Kevin@bkcklaw.com
*Attorneys for Defendants JAMES SHALLECK, in his official capacity as President of the Montgomery County Board of Elections, NAHID KHOZEIMEH, in her official capacity as Vice-President of the Montgomery County Board of Elections, MARY ANN KEEFFE, in her official capacity as Secretary of the Montgomery County Board of Elections, ALEXANDER VINCENT, in his official capacity as Member of the Montgomery County Board of Elections, DAVID NAIMON, in his official capacity as Member of the Montgomery County Board of Elections and JACQUELINE PHILLIPS, in her official capacity as Substitute Board Member of the Montgomery County Board of Elections*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 15th day of September 2017, a copy of the foregoing was sent by first class mail, postage prepaid, to:

Robert D. Popper, Esquire
Paul J. Orfanedes, Esquire
Ramona R. Cotca, Esquire
JUDICIAL WATCH, INC.
425 Third Street SW
Suite 800
Washington, DC 20024

/s/

*Attorneys for Defendants JAMES SHALLECK, in his official capacity as President of the Montgomery County Board of Elections, NAHID KHOZEIMEH, in her official capacity as Vice-President of the Montgomery County Board of Elections, MARY ANN KEEFFE, in her official capacity as Secretary of the Montgomery County Board of Elections, ALEXANDER VINCENT, in his official capacity as Member of the Montgomery County Board of Elections, DAVID NAIMON, in his official capacity as Member of the Montgomery County Board of Elections and JACQUELINE PHILLIPS, in her official capacity as Substitute Board Member of the Montgomery County Board of Elections*

13