IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JUDICIAL WATCH, Inc.

     *Plaintiff*,

v.

LINDA LAMONE, *et al.*

     *Defendants*.

Civil Action No. ELH-17-2006

## MEMORANDUM OPINION

This litigation concerns a request for voter registration records pertaining to Montgomery

County, Maryland.

Plaintiff Judicial Watch, Inc. ("Judicial Watch") has sued a host of defendants, including

Linda Lamone, the Maryland Administrator of Elections, alleging violation of § 8(i)(1) of the

National Voter Registration Act of 1993 ("NVRA" or the "Act"), codified, as amended, at 52

U.S.C. § 20507(i)(1). *See* ECF 1 ("Complaint"). Judicial Watch has also sued David McManus,

Jr., the Chairman of the Maryland State Board of Elections ("SBE"); Patrick Hogan, the Vice-

Chairman of the SBE; Jared DeMarinis, the Public Information Act Officer and Director of the

Division of Candidacy and Campaign Finance for SBE; SBE Members Michael Cogan, Kelley

Howells, and Gloria Lawlah (collectively, the "State Defendants"). *Id.*[1] In addition, plaintiff has

sued James Shalleck, the President of the Montgomery County Board of Elections ("MCBE");

Nahid Khozeimeh, the Vice-President of the MCBE; Mary Ann Keeffe, the Secretary of the

---

[1] It appears that Lawlah is no longer an SBE Member. *See* MARYLAND.GOV, STATE
BOARD OF ELECTIONS (last visited April 19, 2018), http://elections.maryland.gov/
about/index.html. Lawlah was an SBE Member from 2016 through an unspecified date in 2018.
*See* MARYLAND MANUAL ON-LINE, SECRETARIES, DEPARTMENT OF AGING, GLORIA GARY
LAWLAH (last visited April 19, 2018), http://msa.maryland.gov/msa/mdmanual/
10da/former/html/msa12153.html.

MCBE; Alexander Vincent and David Naimon, MCBE Members; and Jacqueline Phillips, an MCBE Substitute Member (collectively, the "County Defendants"). *Id.* Each defendant was sued in his or her official capacity. *Id.*

Plaintiff submitted two exhibits with its Complaint. *See* ECF 1-1 (letter from Thomas Fitton, President of Judicial Watch, to McManus, dated April 11, 2017); ECF 1-2 (email from DeMarinis to Robert Popper, Esquire, and Eric Lee, Esquire, counsel for Judicial Watch, dated July 7, 2017).

The State Defendants have filed a "Motion to Dismiss Plaintiff's Complaint or, in the Alternative, For Summary Judgment" (ECF 19), supported by a memorandum of law (ECF 19-1) (collectively, the "State Motion") and exhibits. *See* ECF 19-2 through ECF 19-4. The County Defendants also moved to dismiss (ECF 20), supported by a memorandum of law (ECF 20-1) (collectively, the "County Motion"). Judicial Watch filed a combined opposition to both motions (ECF 24, "Opposition"), along with three additional exhibits. *See* ECF 24-1 through ECF 24-4. Defendants have replied. *See* ECF 29 ("County Reply"); ECF 31 ("State Reply").

No hearing is necessary to resolve the motions. *See* Local Rules 105.6. For the reasons that follow, I shall deny the State Motion (ECF 19) and I shall grant the County Motion (ECF 20), without prejudice.

## I.     Factual Background[2]

Judicial Watch describes itself as a "not-for-profit, educational organization" that is dedicated to "promot[ing] transparency, integrity, and accountability in government." ECF 1, ¶ 5. According to Judicial Watch, it "regularly requests records from state and local

---

[2] As discussed, *infra*, in the posture of this case, I must assume the truth of the facts alleged by plaintiff. Also, as discussed, *infra*, the Court may consider exhibits incorporated into the suit or integral to it.

governments pursuant to Section 8(i) of the NVRA, and state open-records laws . . . ." *Id.* It then "analyzes all responses and disseminates both its findings and the requested records to the American public to inform it about 'what the government is up to.'" *Id.* (citation omitted).

On April 11, 2017, Thomas Fitton, President of Judicial Watch, "sent an email to the address for the officers and members of the Maryland State Board of Elections and Maryland's State Administrator, and to the address for the officers and members of the Montgomery County Board of Elections." ECF 1, ¶ 11. The email included a letter to McManus dated April 11, 2017. *See* ECF 1-1 ("Notice Letter"). Hogan, Cogan, Howells, Lawlah, Lamone, Shalleck, Khozeimeh, Keefe, Vincent, Naimon, Popper, and Nikki Charlson, the Deputy State Administrator of the SBE, were copied on the Notice Letter. ECF 1-1 at 7.[3]

The Notice Letter, which is appended to the suit (ECF 1-1), was also sent by certified mail to the SBE and the MCBE. ECF 1, ¶ 11. It states, in part, ECF 1-1 at 1-7 (emphasis added):

> Dear Chairman McManus:
>
> We write to bring your attention to violations of Section 8 of the National Voter Registration Act ("NVRA") in Montgomery County, Maryland. From public records obtained, Montgomery County has more total registered voters than adult citizens over the age of 18 as calculated by the U.S. Census Bureau's 2011-2015 American Community Survey. This is strong circumstantial evidence that Montgomery County is not conducting reasonable voter registration record maintenance as mandated under the NVRA.
>
>          *      *      *
>
> This letter serves as statutory notice that Judicial Watch will bring a lawsuit against your office if you do not take specific actions to correct these violations of Section 8 within 90 days. In addition, by this letter we are asking you to produce certain records to us which you are required to make available under Section 8(i) of the NVRA.

---

[3] Phillips was not copied.

           *      *      *

You are receiving this letter because you are the designated chief state election official under the NVRA.

           *      *      *

In order to avoid litigation, we hope you will promptly initiate efforts to comply with Section 8 so that no lawsuit will be necessary. We ask you to please respond to this letter in writing no later than 45 days from today informing us of the compliance steps you are taking. Specifically, we ask you to: (1) conduct or implement a systematic, uniform, nondiscriminatory program to remove from the list of eligible voters the names of persons who have become ineligible to vote by reason of a change in residence; and (2) conduct or implement additional routine measures to remove from the list of eligible voters the names of persons who have become ineligible to vote by reason of death, change in residence, or a disqualifying criminal conviction, and [(3)]to remove noncitizens who have registered to vote unlawfully.

           *      *      *

[P]ursuant to your obligations under the NVRA, please make available to us all pertinent records concerning "the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency" of Maryland's official eligible voter lists during the past 2 years. Please include these records with your response to this letter. These records should include, but are not limited to:

1. *Copies of the most recent voter registration database from Montgomery County, Maryland, including fields indicating name, date of birth, home address, most recent voter activity, and active or inactive status.*

2. Copies of all email or other communications internal to the office of the Maryland State Board of Elections, including any of its divisions, bureaus, offices, third party agents, or contractors, (hereinafter, collectively "State Board of Elections") relating to the maintenance of accurate and current voter rolls.

3. Copies of all email or other communications between the State Board of Elections and all Maryland County Voter Registration Officials concerning:

      a. Instructions to the counties concerning their general list maintenance practices and obligations;

      b. Instructions to the counties for the removal of specific noncitizens and deceased, relocated, or convicted persons identified by the State Board of Elections; and

      c. Notices to the counties concerning any failure to comply with their voter list maintenance obligations under Maryland's program.

4. Copies of all email or other communications between the State Board of Elections and the Maryland State Department of Health, the Maryland State Department of Corrections, the Maryland Motor Vehicle Administration, and the Maryland State Judiciary concerning obtaining information about deceased, relocated, convicted, or noncitizen registered voters for the purpose of updating Maryland's voter registration lists.

5. Copies of all email or other communications between the State Board of Elections and the U.S. Attorney(s) for Maryland, the U.S. District Court for Maryland, the U.S. Social Security Administration, the U.S. Postal Service, the U.S. Citizenship and Immigration Services, and the U.S. Department of Homeland Security concerning the National Change of Address database, the Systematic Alien Verification for Entitlements database, or any other means of obtaining information about deceased, relocated, convicted, or noncitizen registered voters for the purpose of updating Maryland's voter registration lists.

6. Copies of all email or other communications between the State Board of Elections and the Interstate Voter Registration Cross-Check Program, the Electronic Registration Information Center, the National Association for Public Health Statistics and Information Systems, and any other U.S. State concerning obtaining information about deceased or relocated registered voters for the purpose of updating Maryland's voter registration lists. . . .

Judicial Watch received an email from SBE's Nikki Charlson on May 26, 2017, indicating that the SBE had received the Notice Letter. ECF 1, ¶ 18. Further, she stated that the SBE would issue a response to Judicial Watch, and that the SBE would provide Judicial Watch with the "requested documents next week." *Id.*[4]

---

[4] A copy of the email was not submitted with the Complaint.

Judicial Watch received a letter from Lamone on June 5, 2017. *Id.* ¶ 19. She stated, *inter alia*, that Maryland's voter list maintenance program complies with the NVRA, that the SBE was compiling "responsive" documents, and that the SBE would provide those documents to Judicial Watch "'shortly.'" *Id.* ¶¶ 19-20.[5]

By email dated July 7, 2017 (ECF 1-2), DeMarinis informed plaintiff, *id.*: "The documents that you requested from your April 11, 2017 letter are ready for review. However, . . . the request for the Montgomery County voter registration list was not made in accordance with Election Law Article 3-506. Therefore, it will not be processed." ECF 1, ¶¶ 21-22. *See* Md. Code (2017 Repl., 2017 Supp.), § 3-506(a)(1) of the Election Law Article ("E.L.") (stating that "a list of registered voters shall be provided to a *Maryland registered voter*") (emphasis added).

On July 11, 2017, Popper, as counsel for plaintiff, spoke with DeMarinis by telephone. ECF 1, ¶ 24. During that call, Popper noted that because Judicial Watch is organized under D.C. law, it could not be "a Maryland registered voter," as required by E.L. § 3-506(a)(1), and thus could not obtain the "requested voter list." ECF 1, ¶ 24. DeMarinis confirmed that the Maryland Attorney General's office had so indicated. *Id.*

Judicial watch claims that, pursuant to NVRA § 8(i)(1), it is entitled to the materials withheld by defendants. ECF 1, ¶¶ 16, 27-28. Moreover, to the extent that E.L. § 3-506(a)(1) "conflicts with, overrides, or burdens" § 8(i)(1) of the NVRA, Judicial Watch argues that E.L. § 3-506(a)(1) is subject to preemption. ECF 1, ¶ 33.

Additional facts are included in the Discussion.

---

[5] Lamone's letter is quoted in the suit, but not attached to it. However, a copy of the letter was submitted with the State Motion. *See* ECF 19-2.

## II.     Standard of Review

### A.

The State Defendants have moved to dismiss the Complaint under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. *See* ECF 19. A motion styled in the alternative, to dismiss or for summary judgment, implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011). Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see Adams Housing, LLC v. City of Salisbury, Maryland*, 672 F. App'x 220, 222 (4th Cir. 2016) (per curiam). But when, as here, the movant expressly captions its motion "in the alternative," as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur, and the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5C Alan Wright & Arthur Miller, Federal Practice & Procedure § 1366

(3d ed.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id*. at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id*. at 165-67.

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448-49; *see Putney v. Likin*, 656 F. App'x 632, 638-640 (4th Cir. 2016) (per curiam); *McCray v. Maryland Dep't of Transp.*, 741 F.3d 480, 483 (4th Cir. 2014). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (hereinafter, "*Harrods*") (quoting *Evans v. Tech's. Applications & Serv. Co*., 80 F.3d 954, 961 (4th Cir. 1996)); *see also Dave & Buster's, Inc. v. White Flint Mall, LLLP*, 616 F. App'x 552, 561 (4th Cir. 2015).

To raise adequately the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, [he] cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing the affidavit requirement of former Rule 56(f)). A non-moving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll*., 55 F.3d 943, 954 (4th Cir. 1995); *see Gordon v. CIGNA Corp*., ___ F.3d ___, 2018 WL 2209305, at *10 (4th Cir. May 15, 2018); *Amirmokri v. Abraham*,

437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x 274 (4th Cir. 2008), *cert. denied*, 555 U.S. 885 (2008).  In addition, a Rule 56(d) motion may be denied if the opposing party had a reasonable opportunity to conduct discovery.  *Hodgin v. UTC Fire & Sec. Americas Corp., Inc.*, 885 F.3d 243, 250 (4th Cir. 2018).

If a non-moving party believes that further discovery is necessary before consideration of summary judgment, the party who fails to file a Rule 56(d) affidavit does so at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'"  *Harrods*, 302 F.3d at 244 (quoting *Evans*, 80 F.3d at 961); *see also Dave & Buster's, Inc.*, 616 F. App'x at 561.  But, the non-moving party's failure to file a Rule 56(d) affidavit does not obligate a court to issue a summary judgment ruling that is obviously premature.  Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit.  *Harrods*, 302 F.3d at 244 (quoting *Evans*, 80 F.3d at 961).  The failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is pre-mature and that more discovery is necessary," when the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit'," and if the nonmoving party "was not lax in pursuing discovery."  *Harrods*, 302 F.3d at 244-45 (quoting *First Chicago Int'l v. United Exchange Co., LTD*, 836 F.2d 1375, 1380-81 (D.C. Cir. 1988)).

Judicial Watch does not contend that summary judgment prior to discovery would be premature or prejudicial.  Nor has Judicial Watch filed an affidavit or declaration under Fed. R.

Civ. P. 56(d). However, I am of the view that summary judgment is premature because the factual record is not fully developed. Accordingly, I decline to convert the State Motion to one for summary judgment. Rather, I shall construe the State Motion as a motion to dismiss under Rule 12(b)(6).

## B.

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6). *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom.*, *McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ."); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). But, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do

not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, ___ U.S. ___, 135 S. Ct. 346, 346 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. MTA*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011). But, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Courts generally do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses'" through a Rule 12(b)(6) motion. *Edwards,* 178 F.3d at 243 (quoting *Republican Party v. Martin,* 980 F.2d 943, 952 (4th Cir. 1992)). However, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.,* 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan,* 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst,* 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint.*'" *Goodman,* 494 F.3d at 464 (quoting *Forst,* 4 F.3d at 250) (emphasis added in *Goodman* ).

In evaluating the sufficiency of a complaint in connection with a Rule 12(b)(6) motion, a court ordinarily "may not consider any documents that are outside of the complaint, or not expressly incorporated therein . . . ." *Clatterbuck v. City of Charlottesville,* 708 F.3d 549, 557 (4th Cir. 2013); *see Bosiger,* 510 F.3d 442, 450 (4th Cir. 2007). However, a court may properly consider documents incorporated into the complaint or attached to the motion to dismiss, "'so long as they are integral to the complaint and authentic.'" *U.S. ex rel. Oberg v. Pennsylvania Higher Educ. Assistance Agency,* 745 F.3d 131, 136 (4th Cir. 2014) (quoting *Philips v. Pitt Cty. Memorial Hosp.,* 572 F.3d 176, 180 (4th Cir. 2009)); *see Six v. Generations Federal Credit Union*, ___ F.3d ___, 2018 WL 2435430, at *2 (4th Cir. May 31, 2018); *Anand v. Ocwen Loan Servicing, LLC,* 754 F.3d 195, 198 (4th Cir. 2014); *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007); *Am. Chiropractic Ass'n v. Trigon*

*Healthcare, Inc.,* 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied,* 543 U.S. 979 (2004). Moreover, the documents attached to a motion to dismiss need not be supported by a declaration of authentication. *Six*, 2018 WL 2435430, at *2.

Accordingly, when resolving a Rule 12(b)(6) motion, a court may consider exhibits, without converting the motion to dismiss to one for summary judgment. *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015). In particular, a court may consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits . . . ." *Goines*, 822 F.3d at 166 (citations omitted); *see also U.S. ex rel. Oberg*, 745 F.3d at 136; *Anand*, 754 F.3d at 198; *Am. Chiropractic Ass'n*, 367 F.3d at 234; *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).

However, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it." *Goines*, 822 F.3d at 167 (citing *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 455 (7th Cir. 1998)). "When the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Goines*, 822 F.3d at 167. Conversely, "where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Id.*

A court may also "consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines*, 822 F.3d at 166 (citations omitted); *see also Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017), *cert. denied,*

___ U.S. ___, 138 S. Ct. 558 (2017); *Kensington Volunteer Fire Dep't. v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012). To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis in original).

As indicated, Judicial Watch submitted two exhibits with its suit. *See* ECF 1-1 (the Notice Letter); ECF 1-2 (email from DeMarinis to Popper and Lee, dated July 7, 2017). Because these exhibits were attached to the Complaint, I may consider them in the context of a Rule 12(b)(6) motion. *See Goines*, 822 F.3d at 166.

The State Defendants also submitted exhibits with their motion. *See* ECF 19-2 (Lamone's letter to Fitton of June 5, 2017); ECF 19-3 (excerpts from a publically available U.S. Department of Justice document providing guidance as to the requirements of the NVRA);[6] ECF 19-4 (Declaration of Mary Wagner, Director of Voter Registration and the Petition Division of the SBE). I may consider Lamone's letter (ECF 19-2) in regard to the motions because plaintiff incorporated its content into the Complaint. *See* ECF 1, ¶¶ 19-20 (discussing and quoting Lamone's letter of June 5, 2017); *see also* ECF 19-2. As to the DOJ guidance document (ECF 19-3), it is merely submitted as persuasive legal authority, and thus may be considered without converting the State Motion to one for summary judgment.

The Complaint does not discuss or otherwise incorporate Wagner's Declaration (ECF 19-4). *See* ECF 1. Nor does Wagner's Declaration, by its "'very existence,'" give rise to the legal rights asserted by the Complaint. *See Chesapeake Bay Found., Inc.*, 794 F. Supp. 2d at 611

---

[6] *See* U.S. DEPARTMENT OF JUSTICE, CIVIL RIGHTS DIVISION, THE NATIONAL VOTER REGISTRATION ACT OF 1993 (NVRA), QUESTIONS AND ANSWERS (last visited April 23, 2018), https://www.justice.gov/crt/national-voter-registration-act-1993-nvra.

(citation omitted). Accordingly, I shall not consider ECF 19-4 in the context of this Memorandum Opinion.

### III. Discussion

### A. The State Motion

The State Defendants assert, *inter alia*, that the plain and ordinary meaning of NVRA § 8(i)(1) does not require disclosure of the voter registration materials sought by Judicial Watch. *See* ECF 19 at 9-14. Conversely, Judicial Watch argues that the plain and ordinary meaning of § 8(i)(1) requires the State Defendants to disclose the requested materials. *See* ECF 24 at 12-16. Additionally, Judicial Watch argues that, to the extent E.L. § 3-506(a)(1) bars the disclosure of the requested voter registration materials, E.L. § 3-506(a)(1) is preempted by NVRA § 8(i)(1). *See* ECF 1, ¶¶ 28-34; *see also* ECF 24 at 17-18.

I begin with a review of the relevant statutes.

### 1.

In *Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 334 (4th Cir. 2012) (hereinafter, "*Project Vote*"), the Fourth Circuit said: "The NVRA reflects the view of Congress that the right to vote 'is a fundamental right,' that government has a duty to 'promote the exercise of that right,' and that discriminatory and unfair registration laws can have a 'damaging effect on voter participation' and 'disproportionately harm voter participation by various groups, including racial minorities.'" (Quoting 42 U.S.C. § 1973gg(a), *as amended*, 52 U.S.C. § 20501(a)); *see also Harkless v. Brunner*, 545 F.3d 445, 449 (6th Cir. 2008); *Voter Integrity Protect of N.C., Inc. v. Wake Cty. Bd. of Elec.'s*, __ F. Supp. 3d __, 2017 WL 684185, at *1 (E.D.N.C. Feb. 21, 2017); *Action N.C. v. Strach*, 216 F. Supp. 3d 597, 609 (M.D.N.C. 2016);

*N.C. State Conference of the NAACP v. N.C. State Bd. of Elec.'s*, 16-cv-1274, 2016 WL 6581284, at *2-3 (M.D.N.C. Nov. 4, 2016).

To that end, the NVRA is intended to "establish procedures that will increase the number of eligible citizens who register to vote in elections for Federal office," 52 U.S.C. § 20501(b)(1); to "enhance[] the participation of eligible citizens as voters in elections for Federal office," § 20501(b)(2); "to protect the integrity of the electoral process," § 20501(b)(3); and "to ensure that accurate and current voter registration rolls are maintained." § 20501(b)(4); *see Project Vote*, 682 F.3d at 334; *Action N.C.*, 216 F. Supp. 3d at 609; *N.C. State Conference of the NAACP*, 2016 WL 6581284, at * 2-3; *True the Vote*, 43 F. Supp. 3d at 719. But, "[t]he NVRA was not designed as a tool to root out voter fraud, 'cross-over voting,' or any other illegal or allegedly illegal activity associated with casting a ballot on election day." *True the Vote v. Hosemann*, 43 F. Supp. 3d 693, 722 (S.D. Miss. 2014) (citation omitted).

Under the NVRA, states must provide at least three methods for eligible voters to register to vote in federal elections: "by application made simultaneously with an application for a motor vehicle driver's license," 52 U.S.C. § 20503(a)(1); "by mail application," using a federally prescribed form, § 20503(a)(2); and "by application in person" at a designated voter registration agency. *See* § 20503(a)(3); *see also Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1, 5 (2013); *Project Vote*, 682 F.3d at 334; *Action N.C.*, 216 F. Supp. 3d at 609; *True the Vote*, 43 F. Supp. 3d at 719.

Pursuant to 52 U.S.C. § 20507(a)(4), the NVRA also requires states to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of — (A) the death of the registrant; or (B) a change in the residence of the registrant[.]" 52 U.S.C. §§ 20507(a)(4)(A), (B). Otherwise, under §§

20507(a)(3)(A), (B), "the name of a registrant may not be removed from the official list of eligible voters except — (A) at the request of the registrant;" or "(B) as provided by State law, by reason of criminal conviction or mental incapacity." *See also Project Vote*, 682 F.3d at 334; *N.C. State Conference of the NAACP*, 2016 WL 6581284, at * 3. A state may meet the requirements of 52 U.S.C. § 20507(a)(4) by establishing a program under § 20507(c)(1). *See A. Philip Randolph Inst. v. Husted*, 838 F.3d 699, 707 (6th Cir. 2016) ("[W]e note that in subsection (c)(1) of Section 8, Congress provided states with an example of a procedure for identifying and removing voters . . . that would comply with the NVRA's mandates and accompanying constraints."); *Bellitto v. Snipes*, 221 F. Supp. 3d 1354. 1364-65 (S.D. Fla. 2016) ("[T]he Court finds . . . that full compliance with subsection (c)(1) 'would comply with the NVRA's mandates and accompanying constraints.'") (citation omitted).

Section 20507(c)(1) of 52 U.S.C. states:

(c) Voter removal programs

> (1) A State may meet the requirement of subsection (a)(4) by establishing a program under which—
>
>> (A) change-of-address information supplied by the Postal Service through its licensees is used to identify registrants whose addresses may have changed; and
>>
>> (B) if it appears from information provided by the Postal Service that—
>>
>>> (i) a registrant has moved to a different residence address in the same registrar's jurisdiction in which the registrant is currently registered, the registrar changes the registration records to show the new address and sends the registrant a notice of the change by forwardable mail and a postage prepaid pre-addressed return form by which the registrant may verify or correct the address information; or

(ii) the registrant has moved to a different residence address not in the same registrar's jurisdiction, the registrar uses the notice procedure described in subsection (d)(2) to confirm the change of address.[7]

As indicated, the Notice Letter requested documents pursuant to § 8(i)(1) of the NVRA. *See* ECF 1-1; *see also* ECF 1, ¶¶ 15-16. Of import here, NVRA § 8(i)(1) requires states to make certain records available to the public for inspection. *See* 52 U.S.C. § 20507(i)(1); *see also Project Vote*, 682 F.3d at 334-35; *Voter Integrity Protect of N.C., Inc.*, 2017 WL 684185, at *4-5. Section 8(i) states, 52 U.S.C. § 20507(i) (emphasis added):

(i) Public disclosure of voter registration activities

(1) Each State shall maintain for at least 2 years and shall make available for public inspection and, where available, photocopying at a reasonable cost, *all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters*, except to the extent that such records relate to a declination to register to vote or to the identity of a voter registration agency through which any particular voter is registered.

(2) The records maintained pursuant to paragraph (1) shall include lists of the names and addresses of all persons to whom notices described in subsection (d)(2) are sent, and information concerning whether or not each such person has responded to the notice as of the date that inspection of the records is made.

The Fourth Circuit has said: "This language embodies Congress's conviction that Americans who are eligible under law to vote have every right to exercise their franchise, a right that must not be sacrificed to administrative chicanery, oversights, or inefficiencies." *Project Vote*, 682 F.3d at 334-35.

_____

[7] "Notice" is defined in 52 U.S.C. §§ 20507(d)(2)(A), (B) as "a postage prepaid and pre-addressed return card, sent by forwardable mail, on which the registrant may state," *inter alia*, "his or her current address," and, "[i]f the registrant has changed residence to a place outside the registrar's jurisdiction in which the registrant is registered, information concerning how the registrant can continue to be eligible to vote."

If an aggrieved plaintiff meets certain notice requirements, the NVRA permits a private right of action. *See* 52 U.S.C. § 20510(b); *see also Harkless*, 545 F.3d at 450 ("The NVRA authorizes judicial intervention if a state fails to comply with its terms.") (citing *Assoc. of Comm. Org.'s for Reform Now v. Miller*, 129 F.3d 833, 835 (6th Cir. 1997)); *Voter Integrity Protect of N.C., Inc.*, 2017 WL 684185, at *1 (alterations in original) (quoting 52 U.S.C. § 20510(b)(1)) ("The NVRA provides a private right of action to '[a] person who is aggrieved by a violation of [the NVRA]'"); *Bellitto*, 221 F. Supp. 3d at 1360-61 ("This Court's jurisdiction . . . stems directly from § 20510(b)[.]").

Section 20510(b)(1) states: "A person who is aggrieved by a violation of this chapter may provide written notice of the violation to the chief election official of the State involved." And, § 20510(b)(2) states: "If the violation is not corrected within 90 days after receipt of a notice under paragraph (1), or within 20 days after receipt of the notice if the violation occurred within 120 days before the date of an election for Federal office, the aggrieved person may bring a civil action in an appropriate district court for declaratory or injunctive relief with respect to the violation." Moreover, under § 20510(c), "the court may allow the prevailing party . . . reasonable attorney fees, including litigation expenses, and costs."

E.L. § 3-506 is also pertinent. It states, in part, *id.* (emphasis added):

(a)(1) A copy of a list of registered voters shall be provided to a *Maryland registered voter* on receipt of:
    (i) a written application; and
    (ii) a statement, signed under oath, that the list is not intended to be used for:
        1. commercial solicitation; or
        2. any other purpose not related to the electoral process.

(2) In consultation with the local boards, the State Board shall adopt regulations that specify:
    (i) the time for a list to be provided under this subsection;

(ii) the authorization to be required for providing a list;
(iii) the fee to be paid for providing a list;
(iv) the information to be included on a list;
(v) that the residence address of an individual who is a participant in an address confidentiality program may not be disclosed;
(vi) that a participant in an address confidentiality program is not required to apply to the State Board to keep the individual's residence address confidential;
(vii) the format of the information; and
(viii) the medium or media on which the information is to be provided.

## 2.

As noted, the issue presented by the State Motion is whether NVRA § 8(i)(1) requires the State Defendants to disclose the particular voter registration materials requested by Judicial Watch. *See* ECF 19; *see also* ECF 1-1; ECF 1; ECF 24. The Fourth Circuit's analysis in *Project Vote*, 682 F.3d 331, is instructive.

In that case, students at Norfolk State University, an historically African-American university located in Norfolk, Virginia, "experienced problems in registering to vote" before the primary and general elections of 2008. 682 F.3d at 333. Pursuant to NVRA § 8(i)(1), Project Vote/Voting for America, Inc. ("Project Vote"), a non-profit organization "seeking to increase voter registration among young, low-income, and minority voters," requested the Norfolk General Registrar ("Registrar") to produce, *inter alia*, "'the completed voter registration applications of any individual who timely submitted an application . . . [but] was not registered to vote in time for the November 4, 2008 general election.'" *Id.* (citation omitted). However, the Registrar did not produce the materials. *Id.* And, the Virginia State Board of Elections ("VSBE") defended the Registrar's decision. *Id.* Moreover, the VSBE provided Project Vote with an informal opinion of the Attorney General of Virginia, stating that "'the completed voter registration application of any individual is not a part of the record of the implementation of

programs and activities conducted for the purposes of ensuring the accuracy and currency of official lists of eligible voters covered by'" the NVRA. *Id.* (citation omitted).

Thereafter, Project Vote filed suit against the Registrar and the VSBE, alleging that the defendants' refusal to produce completed voter registration applications violated NVRA § 8(i)(1). 682 F.3d at 333-34. The defendants moved to dismiss the suit, asserting that § 8(i)(1) does not mandate disclosure of completed voter registration applications. *Id.* at 334. The district court denied the motion, concluding that "'the common and ordinary meaning'" of § 8(i)(1) encompasses completed voter registration applications, "'as these records concern the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters.'" *Id.* (citations and internal quotation marks omitted).

Project Vote subsequently moved for summary judgment. *Id.* The defendants again argued, *inter alia*, that § 8(i)(1) does not require disclosure of completed voter registration applications. *Id.* Concluding that § 8(i)(1) "'grants the plaintiff access to completed voter registration applications,'" the district court granted summary judgment in favor of Project Vote. *Id.* (quoting *Project Vote/Voting for Am., Inc. v. Long*, 813 F. Supp. 2d 738, 743 (E.D. Va. 2011)).

On appeal, the Fourth Circuit considered, *inter alia*, whether NVRA § 8(i)(1) required disclosure of the completed voter registration applications. 682 F.3d at 333. The Court rejected defendants' argument that the "'plain and ordinary meaning'" of § 8(i)(1) "'does not encompass voter applications.'" *Id.* (citation omitted). The Fourth Circuit observed: "The starting point for any issue of statutory interpretation is of course the language of the statute itself." *Id.* at 355 (citing *United States v. Bly*, 510 F.3d 453, 460 (4th Cir. 2007)). It added: "'[W]hen the words of

a statute are unambiguous, . . . this first canon is also the last [and] judicial inquiry is complete.'"

*Id.* (quoting *Willenbring v. United States*, 559 F.3d 225, 235 (4th Cir. 2009)) (internal quotation marks omitted).

The Court concluded that NVRA § 8(i)(1) mandated the disclosure of completed voter registration applications. *See* 682 F.3d at 335-36. That decision was predicated on three determinations. First, the Court determined that "the process of reviewing voter registration applications is a '*program*' . . . because it is carried out in the service of a specified end— maintenance of voter rolls—and it is an '*activity*' because it is a particular task . . . of Virginia election employees." *Id.* at 335 (emphasis added; citation omitted). Second, the Court determined that "the 'program' and 'activity' of evaluating voter registration applications is plainly 'conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters.'" *Id.* at 335 (quoting 42 U.S.C. § 1973gg-6(i)(1), *as amended*, 52 U.S.C. § 20507(i)(1)). On this point, the Court reasoned that "the process of reviewing voter registration applications keeps official voter lists both 'accurate'—*free from error*—and 'current'—*most recent*." *Id.* at 335 (emphasis added). Third, the Court stated that "the registration applications requested by Project Vote are clearly 'records concerning the implementation of' this 'program[] and activit[y].'" *Id.* at 335-36 (quoting 42 U.S.C. § 1973gg-6(i)(1), *as amended*, 52 U.S.C. § 20507(i)(1)) (alterations in original). This is because they are "'the means by which an individual provides the information necessary for [Virginia] to determine his eligibility to vote.'" *Id.* at 336 (citation omitted).

In the Court's view, § 8(i)(1) "'very clearly requires that *all* records be disclosed.'" *Id.* at 336 (emphasis in original; citation omitted); *see* 52 U.S.C. § 20507(i)(1). In this regard, the Court observed that "'the use of the word all [as a modifier] suggests an expansive meaning

because all is a term of great breadth.'" *Id.* (quotation marks omitted) (alteration in original) (quoting *Nat'l Coal. for Students with Disabilities Educ. & Legal Def. Fund v. Allen,* 152 F.3d 283, 290 (4th Cir. 1998)). Moreover, the Court recognized that the phrase "shall include," as used in § 8(i)(2) of the NVRA, "sets 'a floor, not a ceiling'" as to the sorts of "records" that must be disclosed under § 8(i)(1). *Id.* at 336-37 (citation omitted); *see* 52 U.S.C. §§ 20507(i)(1), (2); *see also Jones v. Southpeak Interactive Corp. of De.*, 777 F.3d 658, 671 (4th Cir. 2015) (stating that "the term 'shall include' sets a floor, not a ceiling" and that "[c]ourts have repeatedly indicated that 'shall include' is not equivalent to 'limited to.'") (quoting *Project Vote*, 682 F.3d at 337) (some quotation marks omitted).

Accordingly, the *Project Vote* Court concluded that completed voter registration applications "fall within Section 8(i)(1)'s general disclosure mandate." 682 F.3d at 336.

### 3.

As I see it, the scope of materials sought by Judicial Watch is not entirely clear. In the Notice Letter plaintiff requested, in relevant part, "[c]opies of the most recent voter registration *database* from Montgomery County, Maryland." ECF 1-1 at 5 (emphasis added); *see also* ECF 1, ¶¶ 16, 27-28. The Notice Letter also provided that the requested "voter registration database" should include "fields indicating name, date of birth, home address, most recent voter activity, and active or inactive status." *Id.* The Complaint quotes the Notice Letter, stating that Judicial Watch requests "'[c]opies of the most recent voter registration database from Montgomery County, Maryland, including fields indicating name, date of birth, home address, most recent voter activity, and active or inactive status.'" ECF 1, ¶ 16. However, neither the Complaint nor the Notice Letter clarifies what is meant by a "voter registration database."

In addition, the Notice Letter requested, *inter alia*, copies of emails or other communications between the SBE and other State agencies "for the purpose of updating Maryland's voter registration lists." ECF 1-1, ¶ 4. But, the Notice Letter did not actually request a Montgomery County "voter registration list." *See* ECF 1-1.

As indicated, the Notice Letter requested the Montgomery County voter registration *database*. ECF 1-1 at 5. And, although the Notice Letter referred to "voter registration *lists*," it did so in the context of plaintiff's request for "all email or other communications . . . concerning obtaining information about . . . updating *Maryland's* voter registration *lists*." ECF 1-1 at 6, ¶ 4 (emphasis added); *see also id.* at 6, ¶ 6. Asking for communications concerning Maryland's voter registration lists is not the same as asking for those lists. Nor was the reference to voter registration lists specific to Montgomery County. Yet, suit commenced after DeMarinis informed Judicial Watch that "the request for the *Montgomery County voter registration list* was not made in accordance with [E.L. §] 3-506." ECF 1-2 (emphasis added).

To the extent that the Complaint seeks both a "voter registration list" (ECF 1, ¶ 28) and a "voter registration database" (*id.* ¶ 16), the Complaint does not make clear whether these terms refer to identical or different materials. And, if the "voter registration list" is different from the "voter registration database," it would appear that Judicial Watch requested the "voter registration list" for the first time in its Complaint. *See* ECF 1-1; ECF 1. If so, the notice requirements of 52 U.S.C. § 20510(b), *supra*, may be relevant.[8]

In the Opposition (ECF 24), plaintiff provides little clarity, using the terms "database" and "voter registration list" interchangeably. The Opposition also seems to equate Montgomery County with the State of Maryland.

---

[8] Defendants have not raised this point.

The Opposition recognizes that the "Complaint alleges that Judicial Watch . . . request[ed] Montgomery County's *voter registration database*." ECF 24 at 25 (emphasis added). And, the Opposition states that the "*database* is the subject of this lawsuit." *Id.* at 20 (emphasis added); *see also id.* at 26 ("These allegations are sufficient to establish that Judicial Watch sent the Notice Letter requesting Montgomery County's *voter registration database* . . . .") (emphasis added). Yet, the Opposition analyzes the disclosure requirement of NVRA § 8(i)(1) in relation to "*Montgomery County's voter registration list*" and "*Maryland's voter registration list*." *Id.* at 12 (emphasis added); *see also id.* at 10, 12-15, 24, 28. Moreover, plaintiff argues in the Opposition that "the voter registration *lists*" are "records" subject to the disclosure requirement of § 8(i)(1). *Id.* at 13 (emphasis added).

Despite the lack of clarity, I must draw all reasonable inferences in favor of Judicial Watch. *See E.I. du Pont de Nemours & Co.*, 637 F.3d at 440; *Semenova*, 845 F.3d at 567; *Houck*, 791 F.3d at 484; *Kendall*, 650 F.3d at 522. Accordingly, I shall assume that the Montgomery County voter registration database is equivalent to the voter registration lists referred to in the Complaint and in the Opposition. *See* ECF 1-1; ECF 1; ECF 24. Therefore, the issue before the Court is whether the Montgomery County voter registration database falls within the disclosure requirements of NVRA § 8(i)(1).

As the Fourth Circuit directed in *Project Vote*, 682 F.3d at 355, the starting point shall be the "language of the statute itself." (Citation omitted). As indicated, 52 U.S.C. § 50207(i)(1) states, in relevant part: "Each State shall . . . make available for public inspection . . . all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters[.]"

In *Project Vote*, 682 F.3d at 355, the Fourth Circuit found that completed voter registration applications constitute a "program" because the process of reviewing those applications is "carried out in the service of a specified end—maintenance of voter rolls." *Id.* And, the Court concluded that the completed voter registration applications constitute an "activity" because the process of reviewing the applications is "a particular task" assigned to "election employees." *Id.* Here, it is plausible that the process of reviewing the Montgomery County voter registration "database" is a "specific task" that is "carried out" by "election officials" in the service of maintaining the County's voter rolls.

Additionally, the Court in *Project Vote* determined that the "'program' and 'activity'" of reviewing voter registration applications is "'conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters'", because the process of reviewing those applications keeps official voter lists "free from error" and "recent." *Id.* at 335 (quoting 42 U.S.C. § 1973gg-6(i)(1), *amended as*, 52 U.S.C. § 20507(i)(1)). At this juncture, it is reasonable to infer that the process of maintaining the Montgomery County voter registration database helps to assure that the information as to the voter lists is current and accurate.

The Court in *Project Vote* also found that completed voter registration applications are "records concerning the implementation" of a program and activity because they are "the means by which an individual provides the information necessary" for election officials to determine whether the individual is eligible to vote. *Id.* at 335-36 (citations omitted). Here, the requested voter registration database may contain records concerning the implementation of programs and activities conducted for the purpose of maintaining accurate and current voter lists.

Drawing all reasonable inferences in favor of Judicial Watch, as I must at this juncture, I conclude that it is plausible that the requested voter registration database contains records

concerning the implementation of programs and activities conducted for the purpose of maintaining accurate and current voter registration lists. To that extent, I shall deny the State Motion (ECF 19). However, the "database" has not been clearly defined here. Therefore, if the Montgomery County voter registration database contains materials beyond the scope of NVRA § 8(i)(1), the State Defendants may seek a protective order as to those materials, or in camera review, for further clarification.

## B. The County Motion

The County Defendants ask the Court to dismiss the suit as to them. *See* ECF 20. They claim, *inter alia*, that Judicial Watch requested the State Defendants, not the County Defendants, to disclose documents under the NVRA. *See* ECF 20-1 at 9-10. The County Defendants also contend that they took no part in the decision to withhold materials from Judicial Watch, and thus they "cannot be accused of violating the NVRA." *Id.* at 10. Accordingly, they maintain that there is no "case or controversy" between them and Judicial Watch. *Id.*

Judicial Watch counters that "the County Defendants knew, or should have known, about Judicial Watch's request" for documents. ECF 24 at 26. Further, Judicial Watch contends that the County Defendants "possess the requested database" (*id.* at 26) and are required by Maryland law to maintain the database for public inspection. *Id.* at 26-27 (citing, *inter alia*, E.L. §§ 3-505(b)(1), (c)(1), stating that "[v]oter registration records stored and retained in a local board office shall be open to public inspection," E.L. § 3-505(b)(1), so as "to ensure the accuracy and currency of the statewide voter registration list." § 3-505(c)(1)). Therefore, Judicial Watch maintains that the County Defendants violated NVRA § 8(i)(1). *See* ECF 24 at 28.

### 1.

The Complaint alleges that "Defendants' refusal to provide the requested" Montgomery

County voter registration database "violates Section 8(i) of the NVRA." ECF 1, ¶ 35. However, the Complaint does not distinguish between the State and County Defendants. *Id.*

The County Defendants do not argue that they, as County officials, are not subject to suit under the NVRA § 8(i)(1) for failing to disclose requested records. Rather, the County Defendants dispute whether Judicial Watch ever made a request of the County Defendants, and whether the failure to disclose the database is plausibly attributable to the County Defendants. *See* ECF 20.

For the reasons explained below, I conclude that Judicial Watch has failed to allege facts sufficient to show a violation of NVRA § 8(i)(1) by the County Defendants.

**2.**

As indicated, the Notice Letter is addressed to McManus in his capacity as Chairman of the SBE. *See* ECF 1-1 at 2. The third paragraph of the Notice Letter states, *id.* (emphasis added): "Judicial Watch will bring a lawsuit against *your office* if *you* do not take specific actions to correct these violations of Section 8 within 90 days. In addition, by this letter we are asking *you* to produce certain records to us which *you* are required to make available under Section 8(i) of the NVRA." Moreover, the Notice Letter states, *id.* at 5 (emphasis added): "We ask *you* to please respond to this letter in writing no later than 45 days from today," and it requests "records" that "should include . . . *Copies of the most recent voter registration database from Montgomery Count*y, *Maryland*, including fields indicating name, date of birth, home address, most recent voter activity, and active or inactive status."

County Defendants Shalleck, Khozeimeh, Keefe, Vincent, and Naimon were copied on the Notice Letter. ECF 1-1 at 7. But, the Notice Letter was not directed to them.

The Complaint avers that, on May 26, 2017, Judicial Watch received an email from

Charlson, the Deputy State Administrator of the SBE, indicating that the SBE had received the Notice Letter, was reviewing it, and planned to provide Judicial Watch with records responsive to the requests.  ECF 1, ¶ 18.

In Lamone's letter to Fitton of June 5, 2017 (ECF 16-2), Lamone stated, in relevant part: "The State Board of Elections received your letter dated April 11, 2017 . . . ."  *Id.* at 2.  She added, *id.* at 8:  "This office is compiling responsive documents and will provide them shortly." *Id.* at 8.  Lamone signed the letter in her capacity as *Maryland's* Administrator of Elections, and not on behalf of Montgomery County.  *Id.* at 8.  The Montgomery County Board of Elections was copied on that letter.  *Id.*

DeMarinis, the Public Information Act Officer for the SBE, emailed Judicial Watch's attorneys on July 7, 2017.  *See* ECF 1-2.  Mary Wagner, the Director of Voter Registration and the Petition Division of the SBE, was copied on the email.  *Id.*  In that email, DeMarinis informed Judicial Watch that documents requested on April 11, 2017, were "ready for review." *Id.* at 2.  He asked Judicial Watch how it wanted the records to be transmitted, given their volume.  But, he advised that the request for the Montgomery County "voter registration list was not made in accordance with [E.L. §] 3-506," and therefore "it will not be processed."  *Id.*

Popper spoke with DeMarinis on the phone on July 11, 2017.  *See* ECF 1, ¶ 24. According to the Complaint, DeMarinis informed Popper that, upon advice of the "Maryland State Attorney General's office," the State Defendants would not provide Judicial Watch with the "requested voter list."  *Id.*

In short, the Notice Letter was clearly directed to the State Defendants, not the County Defendants.  ECF 1-1.  In response, Judicial Watch received a letter from Lamone (ECF 19-2) and an email from DeMarinis (ECF 1-2).  Further, plaintiff's representative spoke with

DeMarinis on the phone, and he informed Judicial Watch that the SBE would not disclose the requested voter registration materials. ECF 1-2; ECF 1, ¶ 24. Of import, there is no allegation in the Complaint that Judicial Watch ever made a similar request to the County Defendants. Nor has Judicial Watch alleged any facts suggesting that the County Defendants played any role in denying disclosure of the requested materials.

Assuming the truth of the allegations, and drawing all reasonable inferences in favor of Judicial Watch, it appears that the County Defendants were merely copied on the Notice Letter of April 11, 2017, and Lamone's letter of June 5, 2017. It does not appear that the County Defendants were asked to produce documents, nor does it appear that the County Defendants have failed to produce requested materials.

Accordingly, I agree with the County Defendants that, at least at this point, the litigation is between the Maryland SBE and plaintiff. Put another way, Judicial Watch has not alleged facts sufficient to show a violation of NVRA § 8(i)(1) that is plausibly attributable to the County Defendants.

## IV. Conclusion

For the foregoing reasons, I shall deny the State Motion (ECF 19), and I shall grant the County Motion (ECF 20), without prejudice. An Order follows.


Date: June 4, 2018                                   _____/s/_____
                                                     Ellen Lipton Hollander
                                                     United States District Judge