**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

**BALTIMORE DIVISION**

| | | |
|---|---|---|
| JUDICIAL WATCH, INC., | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | Civil Action No. 17-cv-02006 (ELH) |
| v. | ) | |
| | ) | Judge Ellen Lipton Hollander |
| LINDA H. LAMONE, *et al.,* | ) | |
| | ) | |
| *Defendants*. | ) | |
| _____ | ) | |

**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OF LAW REGARDING
DEFENDANTS' OBLIGATION UNDER NVRA SECTION 8(i) TO ALLOW
<u>THE INSPECTION OF DATA FIELDS CONTAINING BIRTHDATES</u>**

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................................... ii

INTRODUCTION ....................................................................................................................1

ARGUMENT ...........................................................................................................................2

I.    It Is the Law in this Circuit that Birthdates Must Be Produced in Response to a
Request Pursuant to Section 8(i) of the NVRA. ...........................................................2

A. The Fourth Circuit's Decision in *Project Vote* is Controlling Here and It
Mandates the Disclosure of Birthdates Under Section 8(i). ...................................2

B. Cases Approving the Withholding of Birthdates in Response to Requests
Under Section 8(i) Do Not State the Law in This Circuit.......................................4

II.    Judicial Watch Has a Legitimate Need for Birthdate Information. .............................6

III.   Concerns About Identity Theft and Related Risks to Voters' Privacy Can Be
Addressed by Means of a Court Order. ....................................................................10

CONCLUSION.....................................................................................................................11

# TABLE OF AUTHORITIES

**CASES**                                                                 **Pages(s)**

*Havemann v. Colvin*, 537 F. App'x 142 (4th Cir. 2013) ................................................6

*Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320 (N. D. Ga. 2016) .........................5, 6

*Project Vote/Voting for America, Inc. v. Long*,
    682 F.3d 331 (4th Cir. 2012) ................................................................... *passim*

*Project Vote/Voting for America, Inc. v. Long*, 889 F. Supp. 2d 778
    (E.D. Va. 2012) ......................................................................................3, 4, 6

*True the Vote v. Hosemann*, 43 F. Supp. 3d 693 (S.D. Miss. 2014)......................................4, 5, 9

**FEDERAL STATUTES AND CONSTITUTIONAL PROVISIONS**

5 U.S.C. § 552............................................................................................................6

42 U.S.C. § 1973gg-6(i)................................................................................................3

52 U.S.C. § 20504(c) ...................................................................................................8

52 U.S.C. § 20507(a) ...................................................................................................6

52 U.S.C. § 20507(i) ........................................................................................ *passim*

52 U.S.C. § 20508 ........................................................................................................4

52 U.S.C. § 21083(a) ...................................................................................................8

**STATE STATUTES**

MD. ELEC. LAW § 3-203(c) .........................................................................................8

MD. ELEC. LAW § 10-310(a) ......................................................................................8

**OTHER AUTHORITIES**

11 C.F.R. § 9428.4 .......................................................................................................4

MD. CODE REGS. 33.05.04.04(A) ..............................................................................8

MD. CODE REGS. 33.11.06.03(d) ...............................................................................8

Plaintiff Judicial Watch, Inc. ("Plaintiff" or "Judicial Watch") respectfully submits this supplemental memorandum of law pursuant to this Court's Orders directing further briefing (ECF 55; ECF 57) respecting Defendants' obligation under Section 8(i) of the NVRA to produce data fields containing birthdates.  Judicial Watch submits this memorandum in further support of its motion for summary judgment and in further opposition to Defendants' cross-motion for summary judgment.  ECF 43; ECF 49.

## INTRODUCTION

Judicial Watch first requested Montgomery County's voter list, including voters' birthdates, in its NVRA notice letter of more than two years ago.  ECF 1-1 at 5.

Judicial Watch filed the complaint in this action on July 18, 2017.  ECF 1.  According to the sworn declaration of Defendant Linda H. Lamone, Administrator of Elections for the State of Maryland, "[i]n or around July of 2017," she authorized her staff to remove date-of-birth information from the fields available to those applying for data from the State's voter database, because of complaints from voters.  ECF 53-1, ¶ 3.  This declaration, filed May 8, 2019, was the first notification Judicial Watch had that birthdates would no longer be provided in response to a state records request.

On August 8, 2019, the Court partially granted Judicial Watch's motion for summary judgment, holding that it is "entitled to the voter registration list for Montgomery County that includes fields indicating name, home address, most recent voter activity, and active or inactive status."  ECF 54 at 32.  The Court denied Judicial Watch's motion as it pertained to birthdates, however, and directed the parties to further brief the issue.  *Id.* at 31.

For the reasons set forth below, Judicial Watch should be granted access to the birthdate information for Montgomery County voters recorded in MDVOTERS.

**ARGUMENT**

I.     **It Is the Law in this Circuit that Birthdates Must Be Produced in Response to a Request Pursuant to Section 8(i) of the NVRA.**

     A.     **The Fourth Circuit's Decision in *Project Vote* is Controlling Here and It Mandates the Disclosure of Birthdates Under Section 8(i).**

In *Project Vote/Voting for America, Inc. v. Long*, 682 F.3d 331, 333 (4th Cir. 2012), the plaintiffs sought completed voter registration applications under the disclosure provisions of the National Voter Registration Act of 1993 (NVRA), 52 U.S.C. § 20507(i) (Section 8(i)).  The Fourth Circuit affirmed the district court's determination that Section 8(i) granted the plaintiffs the right to inspect those applications.  *Id.* at 334.  In the course of its ruling, the Court approved the district court's order redacting the Social Security numbers (SSNs) contained in those applications, given that these numbers are "uniquely sensitive and vulnerable to abuse" and that the plaintiffs had "never requested" them and did not object to their redaction.  *Id.* at 339 (internal quotations and citation omitted).

The defendants sought to expand the information that could be redacted, arguing on appeal that "information other than applicants' SSNs, such as . . . criminal history, mental incompetency, and even home addresses, phone numbers, and birth dates implicate real privacy interests" and that allowing access to such information might "suppress registration contrary to congressional intent."  *Id.* (internal quotations omitted, citing briefs).  The Fourth Circuit rejected this argument.  It conceded that Section 8(i), by "requiring public disclosure of personal information" may "conceivably inhibit voter registration in some instances."  *Id.*  "However, this potential shortcoming must be balanced against the many benefits of public disclosure," such as identifying "both error and fraud in the preparation and maintenance of voter rolls" and holding state officials accountable "to the public in ensuring that voter lists include eligible voters and

exclude ineligible ones." *Id.* "Without such transparency, public confidence in the essential workings of democracy will suffer." *Id.* The Court made clear, moreover, that it was *not* basing its decision on its own assessment of the strength of these policy considerations. "It is not the province of this court . . . to strike the proper balance between transparency and voter privacy. That is a policy question properly decided by the legislature, not the courts, and Congress has already answered the question" by adopting Section 8(i)(1). *Id.* The defendants' arguments "ask us to revisit issues already resolved by the Congress." *Id.* at 340. The Court concluded "that completed voter registration applications are subject to disclosure under the NVRA, as they are unquestionably 'records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters.'" *Id.*, quoting 52 U.S.C. § 20507(i)(1).[1]

On remand in the district court the defendants renewed their request for "permission to redact [] the applicant's home address . . . the signature of the applicant; and the month and day of birth," arguing this information "present[s] the same critical privacy concerns" as Social Security numbers. *Project Vote/Voting for America, Inc. v. Long*, 889 F. Supp. 2d 778, 781 (E.D. Va. 2012). To justify raising the same arguments in the district court that they had raised on the appeal they had just lost, the defendants relied on the Fourth Circuit's statement that it had "decline[d] to address every particular question that may arise with respect to the implementation of Section 8(i)(1)" *Id.*, quoting 682 F.3d at 340.

The district court pointed out, however, that the Fourth Circuit had ruled on the issues raised by the defendants. "[Plaintiff] Project Vote argues that the question of redaction has been

---

[1] The statute is cited in *Project Vote* as 42 U.S.C. § 1973gg-6(i)(1). The NVRA has since been renumbered. All citations in this brief are to the current numbers.

decided by both this court and the Fourth Circuit, and there is no reason to revisit that decision. . . . This court agrees with Project Vote." *Id.* "Congress has made its intent clear with regard to disclosure of an applicant's address, signature, and birth date; disclosure of that information, unlike SSNs, is required by the statute" which, "[a]s the Fourth Circuit stated . . . 'plainly requires disclosure of completed voter registration applications.'" *Id.*, quoting 682 F.3d at 339. "[A]s this court and the Fourth Circuit made clear, the proper balance between transparency and voter privacy is a legislative question that 'Congress has already answered.'" *Id.* at 782.[2]

In conclusion, the Fourth Circuit in *Project Vote* held that completed voter registration applications, redacted only to remove Social Security numbers, must be produced in response to a Section 8(i)(1) request. Because those completed applications include birthdates, then birthdates must be produced. This principle resolves the issue presented here. The fact that the plaintiffs in *Project Vote* sought completed voter registration applications, while Judicial Watch seeks voter registration records, is a distinction without a difference. The birthdates on completed voter registration applications are eventually entered into states' voter registration databases. If those birthdates were producible when they were written on Maryland voters' completed voter registration applications, they are producible when later stored in Maryland's voter registration database, MDVOTERS.

**B.    Cases Approving the Withholding of Birthdates in Response to Requests Under Section 8(i) Do Not State the Law in This Circuit.**

In their reply memorandum in support of their cross-motion for summary judgment, Defendants quoted *True the Vote v. Hosemann*, 43 F. Supp. 3d 693, 736 (S.D. Miss. 2014) for

---

[2] The district court also pointed out that the NVRA requires states to accept a national mail registration form that included birthdates. *Id.* at 781, citing 52 U.S.C. § 20508; 11 C.F.R. § 9428.4. In consequence, "there is no question that Congress intended that such information be disclosed under the statute." 889 F. Supp. 2d at 781.

the proposition that the NVRA does not "prohibit a State from protecting voter registrants' SSNs and birthdates as highly personal and sensitive information." ECF 53 at 10. In that case, the district court allowed the State of Mississippi to withhold birthdates in responding to a request under Section 8(i), holding that the "NVRA Public Disclosure Provision . . . does not preempt Mississippi's significant State legislative determination[3] to protect SSNs and birthdates of registered voters from disclosure." *True the Vote*, 43 F. Supp. 3d at 740.

But *True the Vote* is not the law in this Circuit. The district court there, after recognizing and attempting to distinguish *Project Vote*, bluntly stated that "*Project Vote* is not binding authority and this Court respectfully declines to follow the Fourth Circuit's ruling on the scope of the required disclosure." *True the Vote*, 43 F. Supp. 3d at 733. *Project Vote* is binding authority here, however, and that settles the matter.[4]

The only other court to have ordered that information about birthdates must be withheld from a Section 8(i) request is *Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320, 1328 (N.D. Ga. 2016). That case was brought in different circumstances, in that the plaintiff sought voter registration applications that had been rejected or canceled. *Id.* at 1331. In ordering that birthdate information be redacted, the district court noted that the "Plaintiff's requests do not

---

[3] Note that, unlike the defendants in *True the Vote*, Ms. Lamone was not acting in compliance with a specific state privacy statute forbidding disclosure of birthdates.

[4] *True the Vote* is also factually distinguishable. It concerned an effort to contest the results of a narrowly decided primary election, in which volunteers for the losing candidate fanned out across the State in order to examine county voting records. *Id.* at 702, 703. As the district court explained, "Plaintiffs here seek materials for an election challenge, a goal outside the purposes of the NVRA. . . . Plaintiffs provide no meaningful explanation of the need for birthdates in light of the substantial information Defendants have already produced." *Id.* at 733. As set forth in section II below, Judicial Watch can demonstrate its need for the information requested here.

5

seek this specific information" and that birthdates did not bear on what the plaintiffs were trying to accomplish. *Id.* at 1345 n.40. In any event, *Kemp* is not governing authority in this Circuit.

*Havemann v. Colvin*, 537 F. App'x 142, 147-48 (4th Cir. 2013), which Defendants cite for the proposition that birthdates may be withheld for privacy reasons in response to a request under the Freedom of Information Act (FOIA), is clearly inapposite, as it concerns a different federal statute, with a specific privacy exemption. *See* 5 U.S.C. § 552. There are good reasons, moreover, for treating FOIA differently than the NVRA. FOIA is a general public records law, which provides for the disclosure of information to "let citizens know 'what their government is up to.'" *Havemann*, 537 F. App'x at 148 (citation omitted). By contrast, the disclosure provisions of the NVRA are meant to ensure "that Americans['] . . . right to exercise their franchise" are not "sacrificed to administrative chicanery, oversights, or inefficiencies." *Project Vote*, 682 F.3d at 334-35. Accordingly, birthdates must be produced under Section 8(i).

## II. Judicial Watch Has a Legitimate Need for Birthdate Information.

Judicial Watch respectfully submits that it has no obligation under the law of the Fourth Circuit to explain or justify its right to receive the information available in records that are covered under Section 8(i). "Congress has made its intent clear with regard to disclosure of an applicant's address, signature, and birth date; disclosure of that information . . . is required by the statute" which "'plainly requires disclosure of completed voter registration applications.'" *Project Vote,* 889 F. Supp. 2d at 781, quoting 682 F.3d at 339.

Nevertheless, if this were a requirement, Judicial Watch could meet it. As part of its mission, Judicial Watch reviews information from states and counties in order to discover whether they are properly removing ineligible registrants from their voter rolls, as required by Section 8(a)(4) of the NVRA, 52 U.S.C. § 20507(a)(4). In 2017, Judicial Watch hired a

6

professional demographer to analyze the registration rates of every county for which data was available.  ECF 52-1, ¶ 7.  He concluded that Montgomery County had a registration rate greater than 100% of its age-eligible citizen population.  *Id.*, ¶ 10.  Judicial Watch hired demographers to repeat this study in July of this year.  They confirmed that Montgomery County *still* has a registration rate exceeding 100%.  Third Popper Decl., ¶ 5.

From its earliest motion papers Judicial Watch has consistently explained that it sought Maryland voters' birthdate information in order to search for potential duplicate registrations, to search for improbably old registrants, and to compare registration lists from other sources.  ECF 24-1, ¶¶ 5, 8, 9; ECF 52-1, ¶¶ 17, 18.  Of these purposes, combining birthdates with other registration data to identify the duplicate registrations of those who have moved within and without a state is the most important use of that information.[5]  The existence of a high number of duplicate registrations is evidence that old registrations are not being cancelled as required by federal and state list maintenance laws.  Third Popper Decl., ¶ 9.  For this reason, the Department of Justice routinely analyzed state voter registration databases for duplicates.  Jurisdictions with high numbers of duplicates, sometimes numbering in the tens of thousands, were subject to investigations and lawsuits.  *Id.*, ¶ 9.  The undersigned is aware of individual registrants who were simultaneously registered in as many as seven states.  *Id.*, ¶ 10.

The importance of removing duplicate registrations in order to keep voter rolls current and accurate is recognized in federal and state list maintenance laws.  Section 3 of the NVRA, for example, provides that registration forms available at a department of motor vehicles "may

---

[5] To be clear, a duplicate registration is one suggesting that the same person is registered to vote in two or more counties or states.  It does not usually refer to two registrations with completely identical information and addresses, which is likely a data entry or computer error.  Third Popper Decl., ¶ 6.

require only the minimum amount of information necessary to . . . prevent duplicate voter registrations" (among other things), which suggests that preventing duplicate registrations is a congressional priority.  52 U.S.C. § 20504(c)(2)(B)(i); *see* 52 U.S.C. § 21083(a)(2)(B)(iii) (Help America Vote Act mandating that elections officials conduct list maintenance pursuant to the NVRA "in a manner that ensures that . . . duplicate names are eliminated from the computerized [voter] list"); MD. ELEC. LAW § 3-203(c)(2)(i) (automatic voter registration system "shall require only the minimum amount of information necessary for both an applicable transaction and a voter registration to . . . prevent duplicate voter registration").

There are non-profit enterprises that seek to form partnerships among states so that they may compare their voter registration databases to find duplicate registrations.  The best known are the Interstate Voter Registration Crosscheck Program, and the Electronic Registration Information Center (ERIC) run by the Pew Charitable Trusts.  Maryland is a member of ERIC and, as it has testified in interrogatory responses in this case, it supplies the ERIC partnership with registration information—including voters' birthdates—every 60 days.  ECF 49-4 at 9-10.

Birthdates are a particularly important identifier in any search for duplicate registrations, because, unlike addresses and even names, they do not change over time.  Their utility as an election-related identifier is recognized by a number of Maryland laws.  *See*, *e.g.*, MD. ELEC. LAW § 10-310(a)(3) ("For each individual who seeks to vote, an election judge" shall "establish the identity of the voter by requesting the voter to state the month and day of the voter's birth"); MD. CODE REGS. 33.11.06.03.D ("An absentee voter shall be required to provide his or her name and date of birth to be able to access information about his or her absentee ballot."); MD. CODE REGS. 33.05.04.04.A(1)(d) ("every new VRA shall contain the applicant's . . . Date of birth").

The utility of birthdates as identifiers is also recognized in the election-related practices of many other states and counties.  *See* Third Popper Decl., Ex. A at 2 (Letter from Dean C. Logan, Registrar-Recorder/County Clerk of Los Angeles County describing searches involving dates of birth (DOB), which were "rigorously tested and re-tested via random sampling, and [which] all have a true positive rate at or close to 100%"); Third Popper Decl., Ex. B (North Carolina manual describing use of birthdays in various searches for duplicate registrations).

In sum, the number of duplicate voter registrations in a registration database is recognized by federal and state law, by the Department of Justice, by jurisdictions charged with maintaining their voter rolls, including Maryland, and by private groups like Judicial Watch who seek to monitor states' efforts at cleaning their voter rolls, as a significant indicator of whether a jurisdiction is maintaining the accuracy and currency of its voter rolls.  Birthdates, as a relatively unique identifier, are crucial in confirming duplicate registrations.  Judicial Watch has demonstrated that it needs that information to accomplish its mission in enforcing the NVRA.[6]

As set forth in this section, detecting duplicate registrations is a core list maintenance activity, recognized by law and practice.  The use of birthdates makes such detection possible.

---

[6] In *True the Vote* the district court cursorily dismissed the value of birthdates in finding duplicate registrations.  The plaintiffs had raised a number of arguments showing the relevance of birthdate information to list maintenance efforts, including that birthdates would allow them "to search 'conflicting or duplicate voter registrations across counties.'"  43 F. Supp. 3d at 739 n.215.  The district court stated, with almost no discussion, that the plaintiffs' various "reasons do not hold water," and that their "putative justifications are over-inclusive in light of the other tools Plaintiffs have available."  *Id*.  Judicial Watch respectfully submits that for the reasons stated in the text the district court has misapprehended the utility of birthdate information in conducting list maintenance.

**III.     Concerns About Identity Theft and Related Risks to Voters' Privacy Can Be Addressed by Means of a Court Order.**

In *Project Vote*, the Fourth Circuit held that the "proper balance between transparency and voter privacy" was "a policy question properly decided by the legislature, not the courts, and Congress has already answered the question" by adopting Section 8(i)(1).  682 F.3d at 339. Accordingly, Judicial Watch believes that *Project Vote* counsels that no special restrictions to protect voters' privacy should be imposed on its use of birthdate information produced from MDVOTERS.

In the event the Court disagrees, however, Judicial Watch respectfully submits that a court order could address any privacy concerns.  In particular, the Court could order that Judicial Watch not share birthdate information from MDVOTERS with any other person or entity, except insofar as it contacts Defendants regarding what Judicial Watch believes to be inaccurate, outdated, or ineligible registrations.  Judicial Watch represents, moreover, that that is how it has always intended to act regarding birthdate information, with or without the issuance of a court order.

10

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that this Court grant its motion for summary judgment and order Defendants to produce the birthdate information relating to Montgomery County voters.

Dated: September 13, 2019                              Respectfully submitted,


                                                        */s/ Robert D. Popper*
                                                        Robert D. Popper, No. 12607
                                                        Eric W. Lee, No. 20073

                                                        **JUDICIAL WATCH, INC.**
                                                        425 Third Street SW, Ste. 800
                                                        Washington, DC 20024
                                                        Tel: (202) 646-5172
                                                        Fax: (202) 646-5185
                                                        rpopper@judicialwatch.org
                                                        elee@judicialwatch.org

                                                        *Attorneys for Plaintiff*