IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JUDICIAL WATCH, INC.

*Plaintiff*,

v.

LINDA LAMONE, *et al.*
*Defendants*.

Civil Action No. ELH-17-2006

## MEMORANDUM OPINION

Plaintiff Judicial Watch, Inc. ("Judicial Watch"), a "not-for-profit, educational organization" (ECF 1, ¶ 5), sued a host of Maryland officials to compel compliance with Section 8(i) of the National Voter Registration Act of 1993 ("NVRA" or the "Act"), codified, as amended, at 52 U.S.C. § 20507(i). *See* ECF 1 ("Complaint"). In particular, Judicial Watch seeks access to voter registration lists for Montgomery County, Maryland, to include voter dates of birth.

Defendants include Linda Lamone, the Maryland Administrator of Elections; David McManus, Jr., then the Chairman of the Maryland State Board of Elections ("SBE"); Patrick Hogan, the Vice-Chairman of the SBE; Jared DeMarinis, the Public Information Act Officer and Director of the Division of Candidacy and Campaign Finance for SBE; and SBE Members Michael Cogan, Kelley Howells, and Gloria Lawlah. *Id.* [1] They were sued only in their official

---

[1] Plaintiff also sued several persons associated with the Montgomery County Board of Elections. But, by Memorandum Opinion (ECF 34) and Order (ECF 35) of June 4, 2018, I dismissed those defendants from the case.

It appears that Lawlah is no longer an SBE Member. *See* Maryland.gov, State Board of Elections, http://elections.maryland.gov/about/index.html (last visited April 15, 2020). Lawlah was an SBE Member from 2016 through an unspecified date in 2018. *See* Maryland Manual On-Line, Secretaries, Department of Aging, Gloria Gary Lawlah, http://msa.maryland.gov/msa/mdmanual/10da/former/html/msa12153.html (last visited Aug. 5,

capacities, pursuant to 52 U.S.C. § 20510(b).   I shall sometimes refer to the defendants collectively as the "State."

The parties filed cross motions for summary judgment.   ECF 43 (the "Plaintiff's Motion"); ECF 49 (the "Defendants' Motion").   The motions, which were amply briefed, were supported by numerous exhibits. By Memorandum Opinion (ECF 54) and Order (ECF 55) of August 8, 2019, I determined that Judicial Watch is entitled to the "voter list for Montgomery County that includes fields indicating names, home address, most recent voter activity, and active or inactive status."   ECF 55 at 1; *see also* ECF 59, *Judicial Watch, Inc. v. Lamone*, 399 F. Supp. 3d 425 (D. Md. 2019).[2]   However, I did not resolve the issue of whether the State was required to disclose the voters' dates of birth. ECF 59 at 31.  Instead, I asked the parties to brief the issue "more fully," to include consideration of the Fourth Circuit's decision in *Project Vote/Voting for America, Inc. v. Long*, 682 F.3d 331 (4th Cir. 2012).  *Id.*

Defendants' supplemental submission is docketed at ECF 60, and is supported by two exhibits.  ECF 60-1 to ECF 60-2.  Plaintiff's supplement is at ECF 61, and is supported by three exhibits.   ECF 61-1 to ECF 61-3.   Both sides also replied.   ECF 62 (defendants); ECF 63 (plaintiff).  And, plaintiff submitted an additional exhibit.  ECF 63-1.

No hearing is necessary to resolve the remaining issue.  *See* Local Rules 105.6. For the reasons that follow, I shall require the State to disclose the voter birth dates.

---

2019).   And, it appears that Cogan is now the Chairman of the SBE.   *See* MARYLAND.GOV, STATE BOARD OF ELECTIONS, *supra*.

[2] Westlaw subsequently designated the Memorandum Opinion for publication.  *See* ECF 58.  Therefore, I made minor "Bluebook" corrections, and refiled the Memorandum Opinion on September 3, 2019.  *See* ECF 59.  The Order was unchanged.  Hereinafter, I shall cite to ECF 59 or *Judicial Watch, Inc. v. Lamone*, 399 F. Supp. 3d 425 (D. Md. 2019) ("*Judicial Watch I*").

## I.   Factual and Procedural Background[3]

Under Maryland law, the SBE "shall manage and supervise elections in the State and ensure compliance with the requirements of [State law] and any applicable federal law…." Md. Code (2017 Repl. Vol., 2018 Supp.) § 2-102(a) of the Election Law Article ("E.L.").   Among other things, the SBE shall "adopt regulations to implement its powers and duties'"; appoint a State Administrator; and "prescribe all forms required under this article." E.L. §§ 2-102(b)(4), (b)(6), (b)(11).   Lamone, as Administrator of the SBE, is the "Chief State election official … responsible for coordination of State responsibilities" under the NVRA.  52 U.S.C. § 20509; E.L. § 2-103(b)(8).

Maryland maintains a statewide database, known as MDVOTERS, containing voter registration records.  ECF 49-8 (Declaration of Mary Cramer Wagner), ¶4; *see also* ECF 43-3 (Deposition of Mary Cramer Wagner) at 6, Tr. 26-27; ECF 43-4 (Deposition of Janet Smith) at 13, Tr. 71; ECF 59 at 6.  Notably, a voter's registration form requires his or her full birthdate, but only the last four digits of a social security number. [4]

The voter data compiled by the State includes the voter's personal information, as well as information concerning the voter's registration status.  ECF 49-8, ¶ 7.  The information about

---

[3] Because this Memorandum Opinion is cabined to the narrow question of whether, as a matter of law, plaintiff is entitled to voters' birth dates, I need not recount the entirety of the facts, which are largely undisputed.  Rather, I incorporate here the facts set forth in my earlier Memorandum Opinion (ECF 59), and I will restate and supplement the facts to provide context or where otherwise necessary.

[4] The Court takes judicial notice of Maryland's voter registration form.  *See* https://elections.maryland.gov/voter_registration/documents/English_Internet_VRA.pdf.      A court may take judicial notice of matters of public record that constitute adjudicative facts. Fed. R. Evid. 201(b)(2); *Goldfarb v. Mayor and City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015).  "Adjudicative facts are simply the facts of the particular case." Fed. R. Evid. 201, Advisory Committee's note.  *See* Fed. R. Evid. 201(b) (stating, in relevant part, that a "court may judicially notice a fact that is not subject to reasonable dispute" because it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned").

voters is organized into "coded fields" or categories of information. *Id.* The fields include name, date of birth, and address. *See* ECF 43-4 at 13, Tr. 71. Notably, Maryland maintains these records "dating back to 2005…." ECF 49-8, ¶ 9.

E.L. § 3-506(a)(2) states, in part: "In consultation with the local boards, the State Board shall adopt regulations that specify. . . the information to be included on a [voter] list." E.L. § 3-506(a)(2)(iv). Pursuant to Code of Maryland Regulations ("COMAR") 33.03.02.03B, an "application" for a voter registration list "shall be made in writing, in the form required by the State Administrator." COMAR 33.03.02.03(C) states, in part, that the "application form shall provide a listing of: . . . (2) Information options available, for example, name, address, party affiliation, sex, *date of birth*, voting history[.]" (Emphasis added). The SBE utilizes a standardized form for third parties to request voter registration lists (the "Application"). ECF 49-7; ECF 49-1 at 38; *see also* ECF 59 at 24.[5]

According to the State, since August 2017 the Administrator no longer includes date of birth as an available field on the Application. ECF 60 at 2-3; *see also* ECF 49-7; ECF 53-1. In a Declaration provided by Lamone (ECF 53-1), she explains that, because of complaints from Maryland voters concerned about disclosure of "sensitive information," in July 2017 she directed her staff to remove date of birth as a field on the Application. *Id.* ¶ 3. The revised Application form went into effect on August 9, 2017. *Id.* ¶ 4. Thus, the State asserts that since then, birth date information has not been produced in response to an Application. ECF 60 at 13.

On April 11, 2017, *i.e.*, before the change in the Application, Thomas Fitton, President of Judicial Watch, sent an email to Lamone, as well as the officers and members of both the SBE and the Montgomery County Board of Elections. ECF 1, ¶ 11. The email included a letter to

---

[5] To be clear, by "Application," I am referencing the form to obtain voter registration lists, not an individual voter's registration form, used to register to vote.

McManus dated April 11, 2017, on which  Hogan, Cogan, Howells, Lawlah, Lamone, Shalleck,

Khozeimeh, Keefe, Vincent, Naimon, Popper, and Nikki Charlson, the Deputy State

Administrator of the SBE, were copied.  ECF 1-1 ("Notice Letter").[6]

The Notice Letter stated, in part, ECF 1-1 at 1-7 (emphasis added):

Dear Chairman McManus:

We write to bring your attention to violations of Section 8 of the
National Voter Registration Act ("NVRA") in Montgomery County, Maryland.
From public records obtained, Montgomery County has more total registered
voters than adult citizens over the age of 18 as calculated by the U.S. Census
Bureau's 2011-2015 American Community Survey.  This is strong
circumstantial evidence that Montgomery County is not conducting reasonable
voter registration record maintenance as mandated under the NVRA.

\*          \*          \*

This letter serves as statutory notice that Judicial Watch will bring a
lawsuit against your office if you do not take specific actions to correct these
violations of Section 8 within 90 days.  In addition, by this letter we are asking
you to produce certain records to us which you are required to make available
under Section 8(i) of the NVRA.

\*          \*          \*

You are receiving this letter because you are the designated chief state
election official under the NVRA.

\*          \*          \*

In order to avoid litigation, we hope you will promptly initiate efforts to
comply with Section 8 so that no lawsuit will be necessary.  We ask you to
please respond to this letter in writing no later than 45 days from today
informing us of the compliance steps you are taking.  Specifically, we ask you
to: (1) conduct or implement a systematic, uniform, nondiscriminatory program
to remove from the list of eligible voters the names of persons who have
become ineligible to vote by reason of a change in residence; and (2) conduct
or implement additional routine measures to remove from the list of eligible
voters the names of persons who have become ineligible to vote by reason of
death, change in residence, or a disqualifying criminal conviction, and [(3)]to
remove noncitizens who have registered to vote unlawfully.

\*          \*          \*

---

[6] Phillips was not copied on the Notice Letter.

[P]ursuant to your obligations under the NVRA, please make available to us all pertinent records concerning "the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency" of Maryland's official eligible voter lists during the past 2 years.  Please include these records with your response to this letter.  These records should include, but are not limited to:

1. *Copies of the most recent voter registration database from Montgomery County, Maryland, including fields indicating name, date of birth, home address, most recent voter activity, and active or inactive status.*

2. Copies of all email or other communications internal to the office of the Maryland State Board of Elections, including any of its divisions, bureaus, offices, third party agents, or contractors, (hereinafter, collectively "State Board of Elections") relating to the maintenance of accurate and current voter rolls.

3. Copies of all email or other communications between the State Board of Elections and all Maryland County Voter Registration Officials concerning:

   a. Instructions to the counties concerning their general list maintenance practices and obligations;
   b. Instructions to the counties for the removal of specific noncitizens and deceased, relocated, or convicted persons identified by the State Board of Elections; and
   c. Notices to the counties concerning any failure to comply with their voter list maintenance obligations under Maryland's program.

4. Copies of all email or other communications between the State Board of Elections and the Maryland State Department of Health, the Maryland State Department of Corrections, the Maryland Motor Vehicle Administration, and the Maryland State Judiciary concerning obtaining information about deceased, relocated, convicted, or noncitizen registered voters for the purpose of updating Maryland's voter registration lists.

5. Copies of all email or other communications between the State Board of Elections and the U.S. Attorney(s) for Maryland, the U.S. District Court for Maryland, the U.S. Social Security Administration, the U.S. Postal Service, the U.S. Citizenship and Immigration Services, and the U.S. Department of Homeland Security concerning the National Change of Address database, the Systematic Alien Verification for Entitlements database, or any other means of obtaining information about deceased,

relocated, convicted, or noncitizen registered voters for the purpose of updating Maryland's voter registration lists.

6.  Copies of all email or other communications between the State Board of Elections and the Interstate Voter Registration Cross-Check Program, the Electronic Registration Information Center, the National Association for Public Health Statistics and Information Systems, and any other U.S. State concerning obtaining information about deceased or relocated registered voters for the purpose of updating Maryland's voter registration lists. . . .

The parties exchanged correspondence in May, June, and July of 2017.  *See* ECF 59 at 5. Of relevance here, by email dated July 7, 2017 (ECF 1-2), DeMarinis informed plaintiff, *id.*: "The documents that you requested from your April 11, 2017 letter are ready for review. However, . . . the request for the Montgomery County voter registration list was not made in accordance with Election Law Article 3-506.  Therefore, it will not be processed."  ECF 1, ¶¶ 21-22; *see* E.L. § 3-506(a) (stating that upon request "a list of registered voters shall be provided to a *Maryland registered voter*") (emphasis added).

As indicated, in Judicial Watch's Notice Letter, plaintiff requested "[c]opies of the most recent voter registration database" for Montgomery County.  ECF 1-1 at 5.  But, plaintiff subsequently clarified that it was seeking the most recent voter registration "list" for Montgomery County, rather than the database.  On April 24, 2019, Judicial Watch said, ECF 52 at 6: "In light of what Plaintiff learned in discovery, it probably would have been more accurate in the April 2017 notice letter to request the most recent voter registration 'list' rather than 'database.'"  Therefore, in Defendants' Motion, the State posited that "the record is now clear that the subject matter of this case has only ever been the Voter List (and not a Montgomery County database)[.]"  ECF 49-1 at 26.

In my earlier Memorandum Opinion, I determined that the information sought by Judicial Watch was "simply a pared down compilation of voter registrations."  ECF 59 at 20; *Judicial*

*Watch I*, 399 F. Supp. 3d at 440.   Consistent with the Fourth Circuit's holding in *Project Vote/Voting for America, Inc. v. Long, supra*, 862 F.3d at 353, which determined that completed voter registration applications were encompassed within the "plain and ordinary meaning" of Section 8(i) of the Act, I concluded that the voter list constitutes a "record" under Section 8(i). ECF 59 at 16-25.   Moreover, I disagreed with the State's contention that it "need not produce a record if it is over two years old."   *Id.* at 23; *Judicial Watch I*, 399 F. Supp. 3d at 441.   Although the Act only requires a state to retain applicable records for two years, "if a state chooses to retain a record beyond two years, the NVRA required the state to produce the record."   *Id.*; *see* 52 U.S.C. § 20507(i)(1).

Moreover, I rejected the State's claim that, under E.L. § 3-506(a)(1), Judicial Watch was not entitled to the State's voter registration list because it is not a Maryland voter.   ECF 59 at 25; *see also* ECF 49-1 at 22.   I determined that E.L. § 3-506(a), which permits production of voter registration lists only to Maryland voters, was subject to obstacle preemption.   I reasoned that because the provision excluded non-Maryland voters from obtaining voter registration lists, it "obstructs the effective implementation of Section 8(i) and hinders the realization of the NVRA's enumerated purposes."   ECF 59 at 30; *Judicial Watch I*, 399 F. Supp. 3d at 445.

However, of pertinence here, I reserved ruling as to the disclosure of dates of birth.   In my view, based on privacy concerns, that issue required further consideration.

## II.  The NVRA

The NVRA went into effect on January 1, 1995.   As the Fourth Circuit has explained, "[t]he NVRA reflects the view of Congress that the right to vote 'is a fundamental right,' that government has a duty to 'promote the exercise of that right,' and that discriminatory and unfair registration laws can have a 'damaging effect on voter participation' and 'disproportionately

harm voter participation by various groups, including racial minorities.'" *Long*, 682 F.3d at 334 (quoting 42 U.S.C. § 1973gg(a), *as amended*, 52 U.S.C. § 20501(a)); *see also Harkless v. Brunner*, 545 F.3d 445, 449 (6th Cir. 2008); *Voter Integrity Protect of N.C., Inc. v. Wake Cty. Bd. of Elec.'s*, 301 F. Supp. 3d 612, 614-15 (E.D.N.C. 2017); *Action N.C. v. Strach*, 216 F. Supp. 3d 597, 609 (M.D.N.C. 2016); *N.C. State Conference of the NAACP v. N.C. State Bd. of Elec.'s*, 16-cv-1274, 2016 WL 6581284, at *2-3 (M.D.N.C. Nov. 4, 2016).

Accordingly, the Act is intended to "establish procedures that will increase the number of eligible citizens who register to vote in elections for Federal office," 52 U.S.C. § 20501(b)(1); to "enhance[] the participation of eligible citizens as voters in elections for Federal office," § 20501(b)(2); "to protect the integrity of the electoral process," § 20501(b)(3); and "to ensure that accurate and current voter registration rolls are maintained." § 20501(b)(4); *see Long*, 682 F.3d at 334; *Action N.C.*, 216 F. Supp. 3d at 609; *N.C. State Conference of the NAACP*, 2016 WL 6581284, at * 2-3; *True the Vote v. Hosemann*, 43 F. Supp. 3d 693, 719 (S.D. Miss. 2014). On the other hand, "[t]he NVRA was not designed as a tool to root out voter fraud, 'cross-over voting,' or any other illegal or allegedly illegal activity associated with casting a ballot on election day." *True the Vote*, 43 F. Supp. 3d at 722 (citation omitted).

Pursuant to the NVRA, states must provide at least three methods for eligible voters to register to vote in federal elections: "by application made simultaneously with an application for a motor vehicle driver's license," 52 U.S.C. § 20503(a)(1);[7] "by mail application," using a federally prescribed form, *id.* § 20503(a)(2); and "by application in person" at a designated voter registration agency. *See id.* § 20503(a)(3); *see also Arizona v. Inter Tribal Council of Arizona,*

---

[7] For this reason, the provision is commonly known as the "Motor Voter Act." ECF 43-1 at 5.

*Inc.*, 570 U.S. 1, 5 (2013); *Long*, 682 F.3d at 334; *Action N.C.*, 216 F. Supp. 3d at 609; *True the Vote*, 43 F. Supp. 3d at 719.

Section 20507 of the Act is titled "Requirements with respect to administration of voter registration."  In Section 20507(a)(4), the NVRA requires states to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of — (A) the death of the registrant; or (B) a change in the residence of the registrant[.]"  52 U.S.C. § 20507(a)(4)(A)-(B).  Otherwise, under Section 20507(a)(3)(A), (B), "the name of a registrant may not be removed from the official list of eligible voters except — (A) at the request of the registrant;" or "(B) as provided by State law, by reason of criminal conviction or mental incapacity."  *See also Long*, 682 F.3d at 334; *N.C. State Conference of the NAACP*, 2016 WL 6581284, at * 3.  A state may meet the requirements of 52 U.S.C. § 20507(a)(4) by establishing a program under Section 20507(c)(1).  *See A. Philip Randolph Inst. v. Husted*, 838 F.3d 699, 707 (6th Cir. 2016) ("[W]e note that in subsection (c)(1) of Section 8, Congress provided states with an example of a procedure for identifying and removing voters . . . that would comply with the NVRA's mandates and accompanying constraints."); *Bellitto v. Snipes*, 221 F. Supp. 3d 1354. 1364-65 (S.D. Fla. 2016) ("[T]he Court finds . . . that full compliance with subsection (c)(1) 'would comply with the NVRA's mandates and accompanying constraints.'") (citation omitted).

Section 20507(c) of 52 U.S.C. states, in part:

(c) Voter removal programs

(1) A State may meet the requirement of subsection (a)(4) by establishing a program under which—

(A) change-of-address information supplied by the Postal Service through its licensees is used to identify registrants whose addresses may have changed; and

(B) if it appears from information provided by the Postal Service that—

(i) a registrant has moved to a different residence address in the same registrar's jurisdiction in which the registrant is currently registered, the registrar changes the registration records to show the new address and sends the registrant a notice of the change by forwardable mail and a postage prepaid pre-addressed return form by which the registrant may verify or correct the address information; or

(ii) the registrant has moved to a different residence address not in the same registrar's jurisdiction, the registrar uses the notice procedure described in subsection (d)(2) to confirm the change of address.

Section 20507(d) concerns "Removal of names from voting rolls." Section (d)(1) states, in part:

A State shall not remove the name of a registrant from the official list of eligible voters … on the ground that the registrant has changed residence unless the registrant —

(A)    confirms in writing that the registrant has changed residence to a place outside the registrar's jurisdiction in which the registrant is registered; or
(B)(i)  has failed to respond to a notice described in paragraph (2); and
    (ii) has not voted or appeared to vote (and, if necessary, correct the registrar's record of the registrant's address) in an election during the period….

In 52 U.S.C. § 20507(d)(2)(A), "notice" is described as "a postage prepaid and pre-addressed return card, sent by forwardable mail, on which the registrant may state," *inter alia*, "his or her current address[.]" As to a "registrant [who] has changed residence to a place outside the registrar's jurisdiction in which the registrant is registered," the notice is to include "information concerning how the registrant can continue to be eligible to vote." *Id.* § 20507(d)(2)(B).

Of import here, the Act provides for a private right of action. 52 U.S.C. § 20510(b). However, before an injured party may file suit, the party must "provide written notice of the violation to the chief election official of the State involved." *Id.* § 20510(b)(1). And, the injured party may file suit only if "the violation is not corrected within 90 days after receipt of a notice" or "within 20 days after receipt of the notice if the violation occurred within 120 days before the date of an election for Federal office[.]" *Id.* § 20510(b)(2). But, notice need not be provided if the violation occurred "within 30 days before the date of an election for Federal office." *Id.* § 20510(b)(3).

As discussed, plaintiff's Notice Letter requested documents pursuant to Section 8(i)(1) of the NVRA. *See* ECF 1-1; *see also* ECF 1, ¶¶ 15-16. Section (i) is titled "Public disclosure of voter registration activities." Under Section 8(i)(1), states are required to make certain records available to the public for inspection. *See* 52 U.S.C. § 20507(i)(1); *see also Long*, 682 F.3d at 334-35; *Voter Integrity Protect of N.C., Inc.*, 301 F. Supp. 3d at 615. Section 8(i) states, 52 U.S.C. § 20507(i) (emphasis added):

(i) Public disclosure of voter registration activities

(1) Each State shall maintain for at least 2 years and shall make available for public inspection and, where available, photocopying at a reasonable cost, *all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters*, except to the extent that such records relate to a declination to register to vote or to the identity of a voter registration agency through which any particular voter is registered.

(2) The records maintained pursuant to paragraph (1) shall include lists of the names and addresses of all persons to whom notices described in subsection (d)(2) are sent, and information concerning whether or not each such person has responded to the notice as of the date that inspection of the records is made.

### III. Discussion[8]

### A.

The State argues that the SBE is "empowered to specify 'the information to be included on' any list of registered voters made available to a registered voter," pursuant to E.L. § 3-506(a)(2)(iv). *See* ECF 60 at 1. According to the State, the SBE "has delegated that task to the State Administrator, who has the authority to develop the application for voter data on which requests for voter lists must be made." *Id.* at 1-2 (citing COMAR 33.03.02.03 B, C).

Further, the State posits that *Long*, 682 F.3d 331, discussed *infra*, does not require disclosure of birth dates. ECF 60 at 13. And, it argues that the Administrator's decision to withhold birth date information based on privacy concerns comports with general principles expressed throughout federal law. *Id.* at 14-17. In the State's view, birth dates should be redacted entirely. *Id.* at 1. In the alternative, they contend that "the Court should limit any relief it provides on this issue, if it is inclined to provide relief at all, to the age of the voter." *Id.* at 17, n. 31.

To support its position, the State points to several out-of-circuit decisions that recognize the right to privacy with respect to dates of birth in the context of the NVRA. *Id.* at 8-11. It also relies on the Freedom of Information Act's "exemption 6," 5 U.S.C. § 552(c), which exempts disclosure of certain personal information. *Id.* at 4. Defendants cite, *inter alia*, *Havemann v. Colvin*, 537 F. App'x 142 (4th Cir. 2013) (per curiam), for the proposition that, under FOIA's "exemption 6," the privacy interests implicated in releasing the month and date of birth for Social Security applicants outweighed the interest in public disclosure, because dates of birth, in

---

[8] The issue concerning access to voter's dates of birth is addressed in the context of the parties' cross motions for summary judgment. Because I discussed the standard of review for summary judgment in ECF 59 at 8-10, I incorporate it here and need not restate it.

combination with other information, could lead to the identification of specific persons, and the purpose of the FOIA request could be accomplished "with access simply to the year of birth." *Id.* at 148.

The State also points to the laws or regulations of nine states that do not release any dates of birth with voter lists,[9] and to the laws of an additional 17 states that release voter lists with only partial birth date information.[10]   ECF 60 at 5-6.   For example, Mich. Comp. Laws § 168.522(2)(i)  requires that a voter list include "the year of birth of an elector but not include the month and day of birth of an elector."

According to the State, the "reluctance of these federal and state agencies to allow general public access to personal information such as an individual's date of birth in combination with name and address," reflects the looming threat of identity theft.  ECF 60 at 6-7.  Defendants add that the "disclosure of voters' dates of birth could chill voter registration in the state." *Id.* at 14.  This chilling effect, according to defendants, would undermine the intent of Congress in enacting the NVRA, which was to "'increase the number of eligible citizens who register to vote'

---

[9] These states are Alaska (Alaska Stat. 15.07.195(a)(1)), the District of Columbia (3 D.C. Mun. Regs. § 510.5(b)), Hawaii (Haw. Rev. Stat. § 11-97(a)), Indiana (Ind. Code § 3-7-26.4-8(c)(1)), Mississippi (Miss. Admin. Code), New Hampshire (N.H. Rev. Stat. §§ 654:25, 654:31), North Dakota (N.D. Cent. Code §§ 16.1-02.12(8), 16.1-02.15), Wisconsin (Wisc. Stat. § 6.36(1)(b)), and Wyoming (Wyo. Stat. § 22-2-113(d)).

[10] These states are Alabama (Ala. Code § 17-3-53), Arizona (Ariz. Rev. Stat. § 16-168(C)(8)), Colorado, Delaware (Del. Code § 304(h)), Georgia (Ga. Code § 21-2-225(b)), Idaho, Louisiana (La. Rev. Stat. § 18:154C(1)(d)), Maine (Me. Rev. Stat. tit. 21-A, § 196-A(1)(B)), Michigan (Mich. Comp. Laws § 168.522(2)(i)), Minnesota (Minn. Stat. §§ 201.091(4), (9)), New Mexico (N.M. Stat. § 1-4-5.5(B)), North Carolina (N.C. Gen. Stat. §§ 163A-871(a), (c)), Oregon (Or. Laws Ch. 675, §; 2018 Or. Laws Ch. 70, § 21), South Dakota (2020 South Dakota Laws HB 1051.), Utah (Utah Code § 20A-2-104(4)), Vermont (Vt. Stat. tit. 17, § 2154(b)(1)), and Virginia (Va. Code § 24.2-444(A)).

Defendants also point to Colorado and Idaho as states that provide only partial dates of birth. ECF 60 at 5, n.13; *id.* at 6, n.16.  But, the information provided for those states appears to be guidance from their respective secretaries of state, not a statute or a regulation.

in federal elections." *Id.* (quoting 52 U.S.C. § 20501(b)(1)).  Thus, defendants assert that "[t]he NVRA's public inspection provisions should not be construed to thwart these federal and state prerogatives." *Id.* at 7.

Further, defendants maintain that Judicial Watch has not demonstrated why it has requested birth date information "for every voter in Montgomery County, not just for the apparent duplicate registrations," or why it cannot resolve the duplicate registrations with only the birth year, rather than the complete date of birth.  ECF 62 at 6.  In their view, if plaintiff determines probable duplicate registrations, it should then "seek additional Section 8(i) registration records for those particular individuals at that time without compromising the privacy of these and other voters across the state."  ECF 60 at 15.  Defendants also contend that voters cannot be removed from the voter rolls simply because they are "improbably old." *Id.* at 15-16.

The State also relies on the deposition testimony of both Wagner and Smith.  ECF 60-1; ECF 60-2.  Wagner states in her Declaration (ECF 49-8) that she is the Director of the Voter Registration and Petition Division of the SBE.  *Id.* ¶ 1.  And, Smith avers that she is the Voter Registration Manager of Audits at the SBE.  ECF 49-9 (Smith Declaration), ¶ 1.  *Id.*  Wagner and Smith detailed the various circumstances in which voters can be designated "inactive," which include, among other things, changes in residence and death.  Therefore, defendants argue, Judicial Watch has failed to articulate a justification for requiring birth date information so as to "ensure the accuracy of Maryland's voter rolls."  ECF 60 at 16.

Judicial Watch contends that the Fourth Circuit's holding in *Long*, 682 F.3d 331, discussed, *infra*, compels the State's disclosure of birth dates.  ECF 61 at 5.  Although plaintiff contends that "it has no obligation under the law of the Fourth Circuit to explain or justify its

right to receive the information available in records that are covered under Section 8(i)," *id.* at 9, Judicial Watch insists that it has a legitimate need for the birth date information. *Id.* It explains that it requires the full birth date information in order to "discover whether [Maryland is] properly removing ineligible registrants from [its] voter rolls." *Id.* Birth dates, it argues, are necessary for searching for "duplicate registrations" and "improbably old registrants," as well as for comparing "registration lists from other sources." *Id.* at 10.

According to Judicial Watch, duplicate registrations can occur when voters "have moved within and without a state" and have not cancelled their old registrations. *Id.* In plaintiff's view, birth dates "are a particularly important identifier in any search for duplicate [voter] registrations, because, unlike addresses and even names, they do not change over time." *Id.* at 11. And, Judicial Watch argues that its work to "monitor states' efforts at cleaning their voter rolls" is part of its "mission in enforcing the NVRA." *Id.* at 12.

In support of plaintiff's contention that birth date data is essential to determining the accuracy of voter rolls, it has submitted the Third Declaration of Robert Popper, Esquire, an attorney for plaintiff. ECF 61-1. He avers that the U.S. Department of Justice "routinely requested voter registration lists from states and then searched them for likely duplicate registrations." *Id.* ¶ 9. According to Popper, "birthdates. . . can be used in conjunction with other data to confidently identify a particular voter." *Id.* ¶ 11. Plaintiff also provided Popper's Fourth Declaration, ECF 63-1, in which he states that in one of his cases, the "oldest registrants were about 200 years old, according to their recorded birthdates." ECF 63-1, ¶ 4. In addition, plaintiff has submitted a letter from the Clerk of Los Angeles County, detailing how "cross-data algorithms" effectively process deceased voters by running an index of deceased persons against the voter file using first name, last name, SSN, birth date, and house number. ECF 61-2 at 2-3.

And, plaintiff provided a manual from the North Carolina State Board of Elections that states that it runs monthly list maintenance, in part, based on birth dates.  ECF 61-3 at 34.

Judicial Watch also suggests that any concerns about identity theft or privacy interests can be addressed through a court order directing Judicial Watch "not to share birthdate information from MDVOTERS with any other person or entity, except insofar as it contacts Defendants regarding what Judicial Watch believes to be inaccurate, outdated, or ineligible registrations."  ECF 61 at 13.[11]

### B.

Analysis begins with *Long*, 682 F.3d 331.  In *Long*, a voter advocacy organization filed suit in 2010 against Virginia election officials and local election officials, seeking production of completed voter registration applications, including voter applications that had been rejected. *See Project Vote/Voting for America, Inc. v. Long*, 813 F. Supp. 2d 738, 740 (E.D.V.A. 2011). The district court concluded that the defendants violated the NVRA "by refusing to disclose the completed applications with voters' Social Security numbers redacted."  *Long*, 682 F.3d at 333.

In June 2012, the Fourth Circuit upheld the district court's conclusion that Section 8(i)(1) of the NVRA "applies to completed voter registration applications."  *Id.*  The Court concluded that voter registration applications constitute records "within [the] reach" of Section 8(i).  *Id.* at

---

[11] Judicial Watch has also waived "its request for any records pertaining to" voters who "participate in Maryland's confidentiality program, pursuant to which their address, telephone numbers, and email addresses are shielded from disclosure."  ECF 63 at 11.  This program extends to "police officers, certain correctional officers, members of the state or federal judiciary prosecutors and government-employed investigators, victims of domestic violence or stalking, victims of or witnesses to a felony, and anyone able to establish that disclosure could pose a 'threat to individual safety' or 'is likely to lead to an unwarranted and serious invasion of privacy.'"  ECF 60 at 2, n.1 (quoting COMAR 33.04.02.02B-33.04.02.02E).

Counsel for the State informed Judicial Watch that "there are 97 participants in this program in Montgomery County, only three of whom are designated as inactive."  ECF 63 at 11; ECF 63-1 (Popper Decl.), ¶ 7.

336; *see id.* at 337.   And, the Court determined that Section (8)(i) is not "limited to voter removal records."  *Id.* at 335; *see id.* at 337.  To the contrary, it determined that the terminology "shall include," found in Section 8(i)(2) of the Act, is "'not exhaustive.'"  *Id.* at 337 (citation omitted). Rather, it "sets 'a floor, not a ceiling.'"  *Id.* (citation omitted). But, the Fourth Circuit also affirmed the district court's decision to require, for privacy reasons, the redaction of social security numbers ("SSNs") contained on the voter applications.  *Id.* at 339.

At the time *Long* was decided by the Fourth Circuit, the Virginia statute mandating the disclosure of voter records did not require the release of a voter's entire birth date.[12]  The statute provided: "The lists shall contain the name, address, *year of birth*, gender and all election districts applicable to each registered voter."  Va. Code § 24.2-444(A) (effective July 1, 2009 to June 30, 2012) (emphasis added).   Section 24.2-444(B) incorporates the public disclosure requirement of the NVRA.  And, § 24.2-444(C) states: "No list provided by the State Board under subsection A nor any record made available for public inspection under subsection B shall contain. . . the day and month of birth of an individual."

Moreover, it does not appear that the plaintiff in *Long* objected to the district court's redaction requirement for SSNs.  *Long*, 682 F.3d at 339.  But, the defense maintained that voter registration applications should not be released because the applications also include private, personal "'information other than applicants' SSNs, such as responses to requests regarding criminal history, mental incompetency, and even home addresses, phone numbers, and birth dates [which] implicate real privacy interests.'"  *Id.* (quoting appellants' reply brief).  The Fourth Circuit stated, *id.* at 339-40:

---

[12] The Virginia statute continues to mandate disclosure only of the year of birth, not the full birth date.  *See* Va. Code § 24.2-444(A), (C) (effective July 1, 2015).

We do not think appellants' privacy concerns unfounded. By requiring public disclosure of personal information, Section 8(i)(1) may conceivably inhibit voter registration in some instances. However, this potential shortcoming must be balanced against the many benefits of public disclosure. It is self-evident that disclosure will assist the identification of both error and fraud in the preparation and maintenance of voter rolls. State officials labor under a duty of accountability to the public in ensuring that voter lists include eligible voters and exclude ineligible ones in the most accurate manner possible. Without such transparency, public confidence in the essential workings of democracy will suffer.

It is not the province of this court, however, to strike the proper balance between transparency and voter privacy. That is a policy question properly decided by the legislature, not the courts, and Congress has already answered the question by enacting NVRA Section 8(i)(1), which plainly requires disclosure of completed voter registration applications. Public disclosure promotes transparency in the voting process, and courts should be loath to reject a legislative effort so germane to the integrity of federal elections.

The Fourth Circuit in *Long* did not specifically consider the redaction of birth date information.  But, it stated, *id.* at 340 (citation omitted):

In the end, appellants ask us to revisit issues already resolved by the Congress. It may or may not be that Section 8(i)(1) is the most effective means of promoting the NVRA's stated purposes. The public disclosure provision may or may not "increase the number of eligible citizens who register to vote" in federal elections and "enhance[ ] the participation of eligible citizens as voters." 42 U.S.C. § 1973gg(b). But this debate belongs in the legislative arena, not the courts. We also decline to address every particular question that may arise with respect to the implementation of Section 8(i)(1). That is best left to the trial court upon remand.  We do hold, however, that completed voter registration applications are subject to disclosure under the NVRA, as they are unquestionably "records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." *Id.* § 1973gg-6(i)(1).

The Court affirmed and remanded for further proceedings.  On remand, the defendants sought "permission to redact," *inter alia*, "the month and day of the birth of the applicant, while leaving the birth year subject to disclosure."  *Project Vote/Voting for America, Inc. v. Long*, 889 F. Supp. 2d 778, 781 (E.D.V.A 2012).  They "point[ed] to the court's decision to allow redaction of SSNs from the voter registration forms, 'which are not expressly excluded from disclosure

under the NVRA,' and argu[ed] that the . . . birth day and month present the same critical privacy concerns." *Id.* (quoting defense brief).

The district court agreed with plaintiff that there was "no reason to revisit its decision on redaction, in light of the Fourth Circuit's ruling." *Id.* It distinguished birth dates from SSNs, which it characterized as "'uniquely sensitive and vulnerable to abuse.'" *Id.* at 781-82 (citation omitted). And, it stated, *id.* at 781:

> The plain meaning of the NVRA's disclosure requirement is that disclosure of completed voter registration applications containing the address, birth date, and signature of applicants includes disclosure of that information…. Further, the NVRA requires that all states accept a federal form designed in accordance with the statute's guidelines as a voter registration application. *See* 42 U.S.C. § 1973gg–7. That form, the National Mail Voter Registration Form, requires, among other things, the applicant's address, date of birth, and attestation by signature or mark under the penalty of perjury. *See* 11 C.F.R. § 9428.4; *see also Gonzalez v. Arizona*, 677 F.3d 383, 395–96 (9th Cir. 2012) (discussing the contents of the National Mail Voter Registration Form). Thus, there is no question that Congress intended that such information be disclosed under the statute.

The defendants in *Long* again appealed to the Fourth Circuit. *See* Appeal No. 12-2142. But, the appeal was ultimately dismissed by the defendants. *See id.* at ECF 31.

Based, *inter alia*, on *Long*, plaintiff asserts that "completed voter registration applications, redacted only to remove Social Security numbers, must be produced in response to a Section 8(i)(1) request." ECF 61 at 7. Defendants counter that *Long* is not controlling on the particular issue of birth dates. because the Fourth Circuit did not address "whether dates of birth can or should be redacted from voter registration applications." ECF 60 at 13. Defendants insist that the district court erred on remand in *Long* by considering itself bound with respect to birth dates, based on the Fourth Circuit's ruling as to social security numbers. *Id.* n. 28.

## C.

The question here is whether the NVRA requires the State to disclose voter birth dates as part of the voter registration list.  As noted, Judicial Watch contends that *Long* compels such disclosure.  The State disagrees.

I agree with the State that the question of disclosure of birth dates was not directly before the Fourth Circuit in *Long*.  But, I disagree with the State as to the rationale of *Long*.

As to the redaction of SSNs, the *Long* Court characterized such information as "'*uniquely* sensitive and vulnerable to abuse.'"  *Long*, 682 F.3d at 339 (emphasis added; citation omitted).  Although the defendants in that case generally sought protection of personal information, the Fourth Circuit did not suggest that birth dates were so sensitive as to require the same protection as SSNs.  It stated: "Section 8(i)(1) may conceivably inhibit voter registration in some instances."  *Id*.  Moreover, the Court admonished that it was "not the province of this court. . . to strike the proper balance between transparency and voter privacy. . . Congress has already answered the question by enacting NVRA Section 8(i)(1), which plainly requires the disclosure of completed voter registration applications."  *Id.*

On remand, the district court in *Long* was presented with arguments concerning redaction similar to those advanced here.  It stated that "the Fourth Circuit [has] made clear [that] the proper balance between transparency and voter privacy is a legislative question [that] 'Congress has already answered.'"  *Long*, 889 F. Supp. 2d at 782 (citing *Long*, 682 F.3d at 339).

The State has not disclosed voter birth dates in response to an Application since August 2017.  ECF 60 at 3.  But, this information is contained in the State's database, because it is provided by persons who register to vote.  Indeed, it is uncontroverted that Maryland requires individuals who register to vote to provide their full birth dates, and therefore those birth dates

constitute part of the completed voter registration application. And, in my earlier Memorandum Opinion, I concluded that, for the purpose of the NVRA, requesting a "voter list" was not semantically different than requesting each voter registration individually.  ECF 59 at 21.

In seeking redaction of dates of birth, the State relies, *inter alia*, on *True the Vote*, 43 F. Supp. 3d 693, and *Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320 (N.D. Ga. 2016).  ECF 60 at 8-11.  To be sure, these cases soundly address legitimate privacy concerns.  Obviously, however, this Court is not bound by the out-of-circuit cases cited by the State, notwithstanding the important privacy considerations that underpin those decisions.  Rather, I must adhere to the rationale of *Long*.

In *True the Vote*, 43 F. Supp. 3d 693, the district court determined that "disclosure of individuals' birthdates raises serious concerns similar to disclosure of SSNs, particularly when the birthdate disclosures are in conjunction with the disclosure of individuals' full names and current addresses."  *Id.* at 736.  The court added, *id.*:  "Birthdates, when combined with other identifying information available in voter registration records, can be used to obtain—both legally and improperly—a host of other highly personal information about an individual, particularly in this day of computers with vast searching powers."  *Id.*  In reaching its decision, the court explicitly declined to follow *Long*.  *Id.* at 733.  It noted that the "*Project Vote* courts did not need to reach the question presented in this case—whether *all* voter registrants' birthdates must be disclosed in response to any and all requests. . . ."  *Id.* (emphasis in original).

In *Kemp*, 208 F. Supp. 3d 1320, the plaintiff sought disclosure under the Act of records relating, *inter alia*, to rejection of voter registration applications.  *Id.* at 1323-24.  The *Kemp* Court observed: "Section 8(i) requires the disclosure of individual voter registration records, but it does not require the disclosure of sensitive information that implicates special privacy

concerns." *Id.* at 1344.  It added, *id.*: "This conclusion is supported by the text and purposes of

the NVRA, and privacy considerations found in Federal and State laws."  In this regard, the court

pointed out that in Section 8(i) Congress "specifically required disclosure only of the names and

addresses of this category of applicants," which "suggests [that] other types of information may

be protected from Section 8(i)'s disclosure requirement." *Id.*  The court also reasoned that "it is

illogical" to conclude that Congress "intended to erode Federal and State law protecting against

the disclosure of private, personal information." *Id.* at 1345.

In reaching its decision, the *Kemp* Court reviewed some of those laws. *Id.* at 1344.  On

this basis, it concluded that all records subject to disclosure under Section 8(i) must redact

certain personal information, including an applicant's birth date. *Id.* at 1345.  It described birth

dates as "uniquely sensitive, particularly in combination with a full name and address." *Id.* n. 40.

However, the court also noted that the plaintiff did not seek records "to evaluate whether

Defendant rejected applications on the basis of age." *Id.*

After the parties here filed their supplemental briefing, a district judge in North Carolina

distinguished *Long* when concluding that information concerning citizenship status was not

subject to disclosure under the NVRA. *See Public Interest Legal Foundation, Inc. v. Bell*, 5:19-

cv-248, 2019 WL 5290920 (E.D.N.C. Oct. 17, 2019) (Boyle, J.).  An appeal is pending.

In *Bell*, North Carolina "identified potential noncitizen registered voters from two

primary sources: North Carolina's driver's license records, which include a noncitizen

designation on the driver's identification card, and a confidential Department of Homeland

Security database." *Id.* at *4.  Therefore, the plaintiff, a non-profit organization, requested "not

only individual voting registration records, but also documents relating to immigration or citizen

status." *Id.*  In particular, plaintiff requested documents regarding "all registrants who were

identified as potentially not satisfying the citizenship requirements for registration from any official source, including the United States Department of Homeland Security and the North Carolina Department of Motor Vehicles," as well as records of a variety of communications concerning voters who might not be citizens. *Id.* at *1.

The district court in *Bell* concluded that information about citizenship status "raises the specter of immigration violations and criminal activity" and is therefore "plainly the type of information that is both sensitive and vulnerable to abuse." *Id.* at *4. And, the court noted: "Other federal statutes. . . protect from disclosure by [North Carolina] the records sought by plaintiff which would have been used to identify a potential noncitizen voter." *Id.*

In distinguishing *Long*, the district court observed in *Bell* that the Fourth Circuit "decided the narrow question of whether the NVRA requires disclosure of completed voter registration applications." *Id.* at *4. Judicial Watch has requested precisely what the court in *Bell* read *Long* to require—disclosure of the voter list, which is a compilation of completed voter registration applications.

Unlike in *Bell*, information beyond what is found on the completed voter registration applications is not at issue here. Nor is the requested information protected by statute or regulation. Birth dates are part of Maryland voter registration applications.

As noted earlier, many states have passed laws or enacted regulations protecting the privacy of their voters by requiring redaction of birth dates from voter lists. Defendants point to the laws and regulations of 24 states that mandate full or partial redaction of birth dates. ECF 60 at 5-6. However, Maryland is not one of them; defendants have not identified any Maryland statute mandating the redaction or partial redaction of birth dates here.

E.L. § 3-506(a)(2) provides: "In consultation with the local boards, the State Board shall adopt regulations that specify. . . the information to be included on a [voter] list." The SBE adopted a regulation stating that requests for voter registration lists "shall be made in writing, in the form required by the State Administrator." COMAR 33.03.02.03B. And, the Administrator, in turn, can specify the "information options available." COMAR 33.03.02.03(C)(2). The examples in the regulation include "date of birth." *Id.* The Administrator revised the Application in August 2017, to remove voter birth dates. But, by that point, Judicial Watch had already submitted its request for the voter records. The regulatory delegation of authority to the Administrator does not allow the Administrator to circumvent the NVRA or Maryland law.

Judicial Watch need not demonstrate its need for birth date information in order to facilitate its effort to ensure that the voter rolls are properly maintained. Nevertheless, it has put forward reasonable justifications for requiring birth date information, including using birth dates to find duplicate registrations and searching for voters who remain on the rolls despite "improbable" age. *See, e.g.*, ECF 61-1, ¶ 9; ECF 63-1, ¶ 4.

### IV. Conclusion

In sum, the State's privacy concerns are valid, particularly in the context of increasingly sophisticated and flagrant schemes of identity theft. But, the Maryland General Assembly has not enacted a law safeguarding birth dates from disclosure in the context of this case. Nor has the Legislature mandated disclosure only of partial birth date information. Moreover, SBE itself has not promulgated a regulation requiring redaction of voter birth date information. Because full voter birth dates appear on completed voter registration applications, the Administrator may not bypass the Act by unilaterally revising the Application. Disclosure is required under the NVRA.

For the foregoing reasons, I shall grant Plaintiff's Motion with respect to voter birth dates.  And, I shall deny Defendants' Motion.

An Order follows.


Date:   April 17, 2020                                          _____/s/_____
                                                                          Ellen Lipton Hollander
                                                                          United States District Judge